## EMERSON ELECTRIC MFG. CO. v. EMERSON RADIO & PHONOGRAPH CORPORATION et al.

### No. 336.

Circuit Court of Appeals, Second Circuit.

July 17, 1939.

Lawrence C. Kingsland and Edmund C. Rogers, both of St. Louis, Mo., and Pennie, Davis, Marvin & Edmonds, of New York City (Estill E. Ezell, of St. Louis, Mo., of counsel), for appellant.

Darby & Darby, of New York City (Samuel E. Darby, Jr., Louis D. Fletcher, and David Williams, all of New York City, of counsel), for appellees.

Before L. HAND, CHASE, and PATTERSON, Circuit Judges.

L. HAND, Circuit Judge.

■ Judge Goddard's opinion in the district court (24 F.Supp. 481) so fully states the facts that we may proceed at once to a discussion of the merits, supplementing his statement as we go, so far as that may be necessary. In 1923 shortly after Abrams bought the old Victor H. Emerson business, then in bankruptcy, the defendants began to make and sell radios in combination with a manually operated phonograph. The bankrupt company had already been in existence for eight years, during which it had continuously made and sold phonographs and records. It was a natural step to combine these with radios, when radios became commercially available, and to put both into a single cabinet. The defendants changed to separate radios in 1924 or 1925, and their sales have since then increased, as set forth in Judge Goddard's opinion. In 1923 the plaintiff had already been in existence for thirty-three years, during no part of which had it made or sold radios; indeed it has never done so. It had, however, from the outset sold electric motors of one sort or another, installed in all sorts of household apparatus and devices. Its first excursion into the radio field was in 1922 when it made and sold a generator to supply power to a radio transmitter: this it sold for two or three years. In 1926 it made experiments with receiving sets which, however, it never marketed; and in 1926 and 1927 it sold a "converter with filter", as an attachment to a receiving set. Its most important item was the "dynamotor", an attachment for stepping up the voltage for a radio in a motor car. This it began to market in 1931, but the sales had substantially disappeared by 1935. These are the plaintiff's nearest approaches to the radio market. Outside of that market in 1923, when the defendants first made the combination radio-phonograph, they and the plaintiff both had an interest in the name, "Emerson"; the plaintiff, because of its long continued use, just described, and the defendants, because it is universally recognized that the sale of a business does not break the continuity of that reputation upon which customers are likely to rely. Kidd v. Johnson, 100 U.S. 617, 25 L.Ed. 769; Brown Chemical Co. v. Meyer, 139 U.S. 540, 11 S.Ct. 625, 35 L.Ed. 247; Richmond Nervine Co. v. Richmond, 159 U.S. 293, 16 S.Ct. 30, 40 L.Ed. 155.

■ The doctrine upon which the plaintiff must rely is an outgrowth from the general principles of unfair competition. It depends upon two supposititious interests

which the putative wrongdoer invades. One of these is, not in any sales of which he will deprive the plaintiff at the time, for the plaintiff is not selling any of the wares in question, but in those sales which the plaintiff will lose in case he chooses to extend his business into the market which the wrongdoer has begun to exploit. In the case at bar the defendants will not take away any customers from the plaintiff, unless the plaintiff begins to sell radios, and, so far as appears, it has no such purpose, for the present at least. The other interest is the plaintiff's general reputation which goes with his name. Buyers from the putative wrongdoer may also buy from the plaintiff, and may confuse the two; the plaintiff will not wish to expose his reputation to the chances of the wrongdoer's conduct of his business. Again in the case at bar, nothing, with the exception of a single postcard, has as yet come to light to indicate that the plaintiff has suffered in public esteem. So far as appears, the defendants carry on their business in an entirely respectable way, though they make and sell a very cheap radio. Courts have not always thought these two interests—both, it will be observed, altogether future and contingent—substantial enough to justify their intervention. Borden Ice Cream Co. v. Borden's Condensed Milk Co., 7 Cir., 201 F. 501. However, more recently it has become settled that they may be; that is to say, if one merchant has established a business under his name in wares of one sort, a second merchant may not use that name in selling other wares, if these are so like the first merchant's that the public will be apt to think that the first merchant is selling them. We have so held a number of times. Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, L.R.A.1918C, 1039; Anheuser-Busch v. Budweiser Malt Products Corp., 2 Cir., 295 F. 306; France Milling Co. v. Washburn-Crosby Co., 2 Cir., 7 F.2d 304; Yale Electric Corp v. Robertson, 2 Cir., 26 F.2d 972; L. E. Waterman v. Gordon, 2 Cir., 72 F.2d 272. (It would serve no purpose to collect the many authorities from other circuits). The situation may take various forms. The second merchant may have no excuse whatever; he may be a mere pirate. This would be true if he used a trade-mark of the first; and such cases offer no difficulty. On the other hand, the second merchant may have already established a business in his name, which he may wish to extend into a new market, but a market altogether alien to that which he has been exploiting, yet akin to that of the first merchant. That would probably not be a good excuse. Again, as here, the new market may be equally appropriate and akin to the old markets of each, and equally important to the business of each. In that event perhaps the first of the two to occupy it might succeed in retaining possession, although he is junior to the other as between the markets each has theretofore been exploiting. Indeed some courts have even gone so far as to excuse a merchant who extends an existing business into another's market, if the extension is reasonably appropriate to his business. W. & H. Walker, Inc., v. Walker Bros. Co., 1 Cir., 271 F. 395; Federal Securities Co. v. Federal Securities Corp., 129 Or. 375, 276 P. 1100, 66 A.L.R. 984. Finally, the second merchant may be forced to exploit the new market to preserve the business he already has; as would for example have been true here, if it had been impossible to sell phonographs without radios. We have suggested these variants merely to show that there can be no rule for all cases, and that the conflicting interests must always be weighed. In the case at bar, so far as we can see, the interests of the parties in the radio market in 1923 were evenly matched as we have said; but, contrary to the two decisions just cited, we shall assume arguendo that priority as between the existing markets was the critical fact, and that the plaintiff could have enjoined the defendants at that time. Upon that assumption the case must be disposed of by considering the legal effect of what happened thereafter.

We may start by at once laying aside the plaintiff's registration of its name. That did not enlarge its substantive rights at all; all it did was to confer jurisdiction on the court and give the registrant certain procedural advantages. Ungles-Hoggette Mfg. Co. v. Farmers' H. & C. P. Co., 8 Cir., 232 F. 116; Scandanavia Belting Co. v. Asbestos & Rubber Works, 2 Cir., 257 F. 937, 952; Armour & Co. v. Louisville Provision Co., 6 Cir., 283 F. 42, 45; Charles Broadway Rouss, Inc., v. Winchester Co., 2 Cir., 300 F. 706, 712; Kellogg Co. v. National Biscuit Co., 2 Cir., 71 F.2d 662, 666. The plaintiff was merely a merchant which had used its name upon its goods since 1890; and the suit was one of unfair competition. What then was the

effect upon its rights of the intervening thirteen years between 1923 and 1936 when suit was brought? It has been sometimes said that mere delay will never cut short the remedy of injunction in cases of this sort. McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828; Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526; Saxlehner v. Eisner & M. Co., 179 U.S. 19, 39, 21 S.Ct. 7, 45 L.Ed. 60. Those decisions involved trade-marks proper—or at least they were thought to do so—and the reasoning was that infringement of a trade-mark was of necessity a fraud, as indeed it would almost inevitably seem to be. Such reasoning is out of place when the supposed infringer is using his own name to extend an existing business into a market which no one else is then exploiting under that name. But we need not rely upon that difference alone, for, even though mere delay might not bar the suit, there was more here. The defendants had built up an immense business at great expense by the spring of 1936, so large that, judged as of that time, there could be no question that their interest in the name, applied to radios, vastly outweighed the plaintiff's. It does not seem to us material when the plaintiff learned of this business, though in fact that was at least as early as 1929, seven years before the suit was brought: the critical time is when the court is asked to intervene. Of course, so far as the second merchant has had notice, or is chargeable with notice, of the interests of the first, nothing that he may do thereafter will give him any stronger hold upon the new market; but if he acts innocently, and if he is not chargeable with notice, he may demand that the court weigh his interest as it has developed at the time suit is brought. There is a great difference between such a case and one in which the second merchant invades a market which the first is already exploiting. Whether even then he is to be charged with notice of the first's prior user we lay aside; but certainly the defendants at bar should not be charged with notice that the plaintiff would begin to sell radios, or that the public would assume that radios sold by them came from the plaintiff. If the plaintiff proposed to keep the radio market as an unused preserve, it was bound to protect it against invaders by affirmative action; it could not impose upon them the duty of divining its own purposes or possible mistakes of the public. In this view we are confirmed by those decisions which hold that if a merchant has set up a business in a territory to which an earlier merchant has not yet penetrated, the earlier merchant cannot stop him. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; United Drug Co. v. Rectanus, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141; General Baking Co. v. Goldblatt Bros., 7 Cir., 90 F.2d 241; Esso, Inc., v. Standard Oil Co., 8 Cir., 98 F.2d 1. In those decisions, it is true, the second merchant was not shown to have known of the existence of the first's business in the other territory. (The defendants are, strictly speaking, not shown to have known of the plaintiff here). Such knowledge might make a difference, especially when the disputed symbol was a trade-mark. It should not do so, however, when it is a proper name, already lawfully used by the second merchant, and when the first's extension of business, with which the second is to be charged, is not into new territory— which is always probable—but to new wares which nobody can foresee.

The case at bar therefore comes down to whether the defendants had notice of the plaintiff's claims before they had built up their business. Of these the plaintiff never advised them until it brought suit, unless it was by its opposition to the defendants' registration in 1933 of the name, "Emerson Radio and Television", for radios and television. That opposition was not a claim to the exclusive use of the name, "Emerson", upon radios; all that was at stake was the defendants' own exclusive right to it; if they failed, it by no means followed that the plaintiff was entitled to exclude them. Each party might be free; and by that time probably each party in fact was free, because already the defendants' business had become very substantial. Only a plain assertion that the plaintiff meant to monopolize the name, would have been notice to charge the defendants, and would have put at risk the continuance of their business. The appeal seems to us peculiarly without merit.

Decree affirmed.