**S. C. JOHNSON & SON, Inc., v. JOHNSON.**

**No. 38.**

Circuit Court of Appeals, Second Circuit.

Dec. 30, 1940.

---

428

Babcock, Sullivan & Weaver, of Buffalo, N. Y. (John R. Weaver, of Buffalo, N. Y., of counsel), for appellant.

Waugh & McClellan, of Chicago, Ill., and Harold I. Popp, of Buffalo, N. Y. (William F. Waugh and Vernon B. Bates, both of Chicago, Ill., of counsel), for appellee.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

The defendant appeals from a judgment enjoining him from selling his "Household Cleaner" under a label in which appears the word "Johnson's"; from imitating the plaintiff's trade-mark (which is the same word) or "affixing" it to goods "of substantially the same descriptive properties" as are mentioned in the plaintiff's "registrations"; and from representing that his goods "emanate from or are in any way connected with plaintiff." The facts were as follows: The plaintiff is a Wisconsin corporation organized in 1932 to take over a business founded in 1886 by one, Samuel C. Johnson, and thereafter carried on either by him, or by a firm made up of himself and his son, or himself, his son and his grandson. At the time of the trial in November, 1938, this business had become very large, employing nearly 900 persons and selling to more than 17,000 dealers and jobbers. Originally Johnson had made and sold only floor-wax; later he, or the firm, added other preparations— floor cleaners, varnishes, fillers, brushes, enamels, lacquers, waxes for motors, furniture polishes and the like; but never any sort of fabric cleaner. At some time undisclosed, but after 1932, the plaintiff began to sell as suitable for glazed surfaces one of its cleaners which it had theretofore sold only as a silver polish; that was its first excursion into any of the markets which the defendant has ever exploited, as will appear. It registered the name, "Johnson's," as a trade-mark in 1915, 1923, 1927 and 1928, applicable generally to its products; and it has always conspicuously marked all its boxes or bottles with that word. In 1932 the defendant started in business under the name, "Johnson Prod-

ucts Company"; it may be assumed that he did not then know of the plaintiff's business. He made and sold a cleaning fluid, used chiefly for rugs, upholstery, tapestry and other fabrics, but also for woodwork, tiles and other glazed surfaces. He adopted a yellow label with the word "Johnson's," in large red letters and below it the word "Cleaner," in letters half the size; at the bottom of the label was the legend in small type, "Copyright 1933, by Johnson Products Co. Buffalo, N. Y." The plaintiff proved to the satisfaction of the judge that the defendant's use of the name has caused confusion among the plaintiff's customers; and we cannot say that the finding is "clearly erroneous." We should have so found ourselves; and indeed the testimony leaves no doubt that, while he did not actively instigate his employees to mislead customers, the defendant instructed them not to undeceive any who were already misled and to take advantage of their confusion.

Obviously the plaintiff cannot stand upon the usual grievance in such cases; i. e. that the defendant is diverting its customers. It has no customers to divert, for it does not sell a cleaner for fabrics; and, as to glazed surfaces, it began to sell its cleaner for these after the defendant; it was the newcomer in that market. Therefore it invokes the doctrine that when a good will is established under the owner's name, given or assumed, he may protect it, not only against the competition of those who invade his market, but also against those who use the name to sell goods near enough alike to confuse his customers. We have often so decided, and it is not necessary to do more than refer to our last discussion. Emerson Electric Mfg. Co. v. Emerson Radio & Phonograph Corp., 105 F.2d 908. Since in such a situation the injured party has not lost any sales, the courts have based his right upon two other interests: first, his reputation with his customers; second, his possible wish to expand his business into the disputed market. The first of these is real enough, even when the newcomer has as yet done nothing to tarnish the reputation of the first user. Nobody willingly allows another to masquerade as himself; it is always troublesome, and generally impossible, to follow the business practices of such a competitor closely enough to be sure that they are not damaging, and the harm is frequently done before it can be prevented. Yet even as to this interest we should not forget that, so long as the newcomer has not in fact misconducted himself, the injury is prospective and contingent, and very different from taking away the first user's customers. The second interest is frequently less palpable. It is true that a merchant who has sold one kind of goods, sometimes finds himself driven to add other "lines" in order to hold or develop his existing market; in such cases he has a legitimate present interest in preserving his identity in the ancillary market, which he cannot do, if others make his name equivocal there. But if the new goods have no such relation to the old, and if the first user's interest in maintaining the significance of his name when applied to the new goods is nothing more than the desire to post the new market as a possible preserve which he may later choose to exploit, it is hard to see any basis for its protection. The public may be deceived, but he has no claim to be its vicarious champion; his remedy must be limited to his injury and by hypothesis he has none. There is always the danger that we may be merely granting a monopoly, based upon the notion that by advertising one can obtain some "property" in a name. We are nearly sure to go astray in any phase of the whole subject, as soon as we lose sight of the underlying principle that the wrong involved is diverting trade from the first user by misleading customers who mean to deal with him. Unless therefore he can show that, in order to hold or develop his present business, he must preserve his identity in the disputed market, he cannot rely upon the second of the two interests at stake. We discussed this in Emerson Electric Mfg. Co. v. Emerson Radio & Phonograph Corp., supra (105 F.2d 908) but the decision did not depend upon it. It follows from what we have said that the newcomer will be subject to stricter limitations upon the use of his name when he is competing in the first user's own market, than if, as here, he has been the first to enter a new, though closely related, market.

It is well settled that a newcomer may be compelled to add some distinguishing words if he chooses to use even his own surname to conduct his business. Thaddeus Davids Co. v. Davids Mfg. Co., 233 U.S. 461, 34 S.Ct. 648, 58 L.Ed. 1046, Ann.Cas.1915B, 322; L. E. Waterman Co. v. Modern Pen Co., 235 U.S. 88, 94, 35 S.Ct. 91, 59 L.Ed. 142; John B. Stetson Co.

v. Stephen L. Stetson Co., 2 Cir., 85 F.2d 586. However, so far as we have found, in all these cases the newcomer has been actually competing, and did not, as here, merely enter an adjacent market. As we have just said, what is a reasonable resolution of the conflicting interests in one case ordinarily will not be in the other; and it is obvious that no general principle is available and that the interests must always be weighed against each other. In the case at bar, while the defendant has not so conducted his business as to disparage the plaintiff's name, or injure its good will among those who may confuse the two, the plaintiff is nevertheless entitled to some measure of protection against the future for the reasons we have already given. On the other hand there is no evidence that it will be necessary for the protection or development of its markets to go into the adjacent market for fabric cleaners, or even that it was necessary in 1932 to go into that for cleaners of glazed surfaces; and without such proof we cannot regard this interest of the plaintiff as entitled to legal protection. Therefore, while it is entitled to some measure of relief, we think that the judgment went too far. It will be enough if the defendant is enjoined from using the word "Johnson's," except in combination with the word "Cleaner," or to use the phrase so constituted except in immediate juxtaposition to the legend, "made by the Johnson Products Company, Buffalo, N. Y.," in type equally large and conspicuous. It is quite true that this will not surely advise the public that the defendant's cleaner is not made by the plaintiff; but it appears to us that the only alternatives are too drastic. That chosen by the district judge, while it did not entirely forbid the use of defendant's name, took from him a very natural idiom; it would have been appropriate enough, if he was competing, but not where the injury is so problematical as it is. The only other is to compel him to use the phrase, often prescribed in such cases, "not connected with S. C. Johnson & Son Inc." That is even more severe; it not only advertises the injured party, but directly suggests that the defendant has been found guilty of some unfair practice. When all is said, if a man allows the good will of his business to become identified with a surname so common as Johnson, it is fair to impose upon him some of the risk that another Johnson may wish to sell goods not very far afield; and he must show a substantial interest if he would seriously impair the second Johnson's privilege to use his own name in customary ways. We have annexed the judgment in the modified form in which it is to be entered.[1]

Judgment modified with costs to the defendant.

---

[1] "UNITED STATES DISTRICT COURT WESTERN DISTRICT OF NEW YORK

S. C. JOHNSON & SON, INC.
Plaintiff,
—v.—
JOHN W. JOHNSON,
Defendant.

"This cause came on to be heard at the January, 1941 Term of this court and was argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged and decreed that:

"1. An injunction be, and the same is hereby allowed as prayed for in the Amended Bill of Complaint, and the said John W. Johnson, defendant, his agents, servants and employes, and all holding by, through or under him, are hereby perpetually enjoined from selling or offering for sale, directly or indirectly, his household cleaner on which the name 'Johnson's' appears as part of the title or name of the product on the label or packaging thereof, unless he uses the words 'Johnson's Cleaner' as a single phrase and adds in immediate juxtaposition thereto the legend, 'made by Johnson Products Company, Buffalo, N. Y.' in type equally large and conspicuous; and from copying the plaintiff's trade-mark, 'Johnson's' by using it without the aforesaid legend, and from otherwise infringing the plaintiff's trade-mark and competing unfairly with the plaintiff.

"2. The defendant, John W. Johnson, his agents, servants, employes and attorneys, are further permanently restrained and enjoined from authorizing, either actually or impliedly, any agents, demonstrators, salesmen or dealers, from representing to any buyer, retailer or consumer that the goods manufactured, sold or advertised by the said defendant emanate from or are in any way connected with plaintiff, and from causing others in any way to make such oral or written representations.

"3. It is further ordered, adjudged and decreed that plaintiff having waived damages, no damages or costs shall be recovered by the plaintiff from the defendant.

"Dated this — day of ———, 1941."