**HYDE PARK CLOTHES, Inc. v. HYDE PARK FASHIONS, Inc.**

No. 24, Docket 22342.

United States Court of Appeals Second Circuit.

Argued Jan. 7, 1953.

Decided April 29, 1953.

Clark, Circuit Judge, dissented.

Truman A. Herron, Cincinnati, Ohio, for appellant, Wood, Herron & Evans, Cincinnati, Ohio, and Hays, Wolf, Schwabacher, Sklar & Epstein, New York City, of counsel.

Oscar Levine, New York City, for appellee.

Before SWAN, Chief Judge, and CLARK and FRANK, Circuit Judges.

SWAN, Chief Judge.

This is an appeal by the plaintiff from a judgment dismissing its complaint on the merits, after a trial, in a suit charging infringement of a registered trade-mark and unfair competition. Federal jurisdiction was based on the Trade Mark Act of 1946, 15 U.S.C.A. §§ 1114, 1121, with pendent jurisdiction under 28 U.S.C.A. § 1338(b) as to the claim of unfair competition, and also on diversity of citizenship, 28 U.S.C.A. § 1332. Plaintiff's trade-mark, registered January 2, 1923 as No. 163,111 under the Act of February 20, 1905, showed the words "Hyde Park" in combination with a golfing scene. The trial court found no infringement of this trade-mark, and this finding is not challenged by the appellant.[1] The court also found that the plaintiff had a good common-law trade-mark in the words "Hyde Park", for men's clothes manufactured by it and that this mark was not infringed by the defendant either by the use of its corporate name, "Hyde Park Fashions, Inc.," or by using the words "Hyde Park" in its advertising and on the labels it attaches to the garments it manufactures and sells. The trial court further held that the defendant in the manufacture and sale of its ladies' suits and coats does not compete unfairly with plaintiff in its manufacture and sale of men's suits and coats. Only this conclusion as to the non-existence of unfair competition is attacked by the appeal.

The trial court made detailed findings of fact and wrote an opinion (unreported). The appellant does not object to the court's findings on factual questions; it disputes only the legal conclusions drawn therefrom. The parties are not in direct competition. Plaintiff and its predecessors in the business have been engaged in the manufacture and sale of men's clothing, particularly suits, and since 1922 have used the words "Hyde Park" on their labels. Plaintiff has never manufactured or sold women's garments. Defendant was incorporated in 1945 and deals exclusively in women's clothing, classified in the garment trade as "Junior Miss Sizes and Models." When defendant adopted its corporate name it had no knowledge of the existence of plaintiff. It chose a name which its predecessor had used in his business and which the New York Secretary of State informed it was available.[2] Both plaintiff and defendant sell their garments nationally in practically all the states. They deal with retailers who sell to the public. As applied to both plaintiff and defendant the trade-mark "Hyde Park" does not have a geographical connotation but has a secondary connotation connoting style or quality. Persons engaged in the manufacture and retailing of men's suits and coats associate the words "Hyde Park" in the men's clothing field with the plaintiff; those engaged in the manufacture and retailing of women's suits and coats associate the words in the women's clothing field with the defendant. The defendant has not attempted to palm off its product as the product of the plaintiff. It has not diverted any of the plaintiff's customers; nor has the plaintiff sustained any loss or damage as the result of any similarity in the corporate names of plaintiff and defendant. Such similarity has caused no "confusion" in the trade and the purchasing public has not been misled into believing that plaintiff is the source or origin of defendant's merchandise. The plaintiff's garments are priced somewhat higher than defendant's, but this difference in price does not adversely affect plaintiff's reputation or good will. The defendant has spent more, in proportion to gross

1. The appellant's brief states: "Appellant is not here urging the cause of action on the registered mark and is entirely content that it be ignored. If it is ignored, then this court has nothing before it except an action in which the jurisdiction is predicated solely on diversity."

2. The plaintiff did not qualify itself to do business in New York State until 1950.

sales, in advertising than has the plaintiff; and its product is highly considered among department and specialty store buyers, because of its quality and its patented style of skirt. In its advertising and merchandising defendant refers to its suits as "Drum Skirt" suits.

The appellant urges that the first question for determination is whether federal law or state law is controlling in a cause of action for unfair competition in which federal jurisdiction rests solely on diversity, although jurisdiction was also claimed as pendent to an action on a federally registered trade-mark which the court found valid but not infringed. It is said that the question is "so controversial" that it should be decided "even though in appellant's view the result of the case should not turn on the decision," because it is entitled to prevail regardless of whether federal or state authorities are applied.[3] Judge Clark is of opinion that because of the Lanham Act federal law controls, but a majority of the court thinks that a decision as to which law should be applied is unnecessary, since in our opinion the application of either federal or state law requires affirmance.

If it be assumed that federal law is to be applied, there is no need to add

anything to Judge Leibell's opinion. He analyzed the principal cases in this circuit involving competition in related fields.[4] As these cases point out, the interests of the owner of a trade-mark who seeks to extend it to cover goods on which he has never used it are two: (1) the possibility that trade practices of the defendant may stain the reputation of the plaintiff in the minds of his customers; and (2) the possibility that some time in the future the plaintiff may wish to extend his business into the market which the defendant has already begun to exploit. These interests must be weighed against the interests of the defendant to preserve whatever good will he has acquired by selling his goods under the name and marks he has adopted.[5] Judge Leibell then demonstrated by a discussion of the facts that the plaintiff had not shown any basis for injunctive relief.[6] We agree. Our recent decision in Admiral Corporation v. Penco, Inc., 2 Cir., 203 F.2d 517, involves a different situation for there the court found intentional palming off and actual confusion.

Nor do the New York cases, if state law rather than federal be applicable, lead to a different conclusion when no intentional palming off exists and no actual or likely confusion has been found.[7] According to

3. In support of applying federal law, the appellant cites Grocers Baking Co. v. Sigler, 6 Cir., 132 F.2d 498; and Jewel Tea Co., Inc., v. Kraus, 7 Cir., 187 F.2d 278.

4. S. C. Johnson & Son v. Johnson, 2 Cir., 116 F.2d 427; S. C. Johnson & Son v. Johnson, 2 Cir., 175 F.2d 176, certiorari denied 338 U.S. 860, 70 S.Ct. 103, 94 L. Ed. 527; Federal Telephone & Radio Corporation v. Federal Television Corp., 2 Cir., 180 F.2d 250.

5. Our recent decisions in Miles Shoes, Inc., v. R. H. Macy & Co., 2 Cir., 199 F.2d 602, certiorari denied 345 U.S. 909, 73 S.Ct. 650, and Pastificio Spiga Societa Per Azioni v. De Martini Macaroni Co., 2 Cir., 200 F.2d 325 are not concerned with goods in related fields; they cannot be regarded as in any respect inconsistent with the doctrine expounded in the Johnson and Federal cases.

6. The concluding paragraph reads as follows:

"I have concluded that defendant does not infringe plaintiff's trade-mark and does not unfairly compete with plaintiff. No harm has come to plaintiff by way of 'confusion'; nor any damage to plaintiff's reputation by defendant's use of the words 'Hyde Park' in its corporate name or on its women's suits. And there is no likelihood of any damage to plaintiff. Defendant has taken nothing from plaintiff; the fact is defendant has paid its own way in acquiring a good will of its own in the women's field. Plaintiff has stated that it does not ask damages. It proved none. Nor has it shown any threat of damage which could be the basis for asking for injunctive relief. The complaint will accordingly be dismissed on the merits."

7. See, for example, Eastern Construction Co. v. Eastern Engineering Corp., 246 N.Y. 459, 462, 159 N.E. 397, 398,
"Justification, if any, for the injunction, must rest upon a finding that the corporate name which the defendant has adopt-

the appellant "the latest pronouncement of the New York courts on this subject" is Time, Inc., v. Life Color Laboratory, Inc., 198 Misc. 1038, 101 N.Y.S.2d 586, 587. There the trial judge found that there had been no palming off, no confusion, no inferiority in the defendant's work which might discredit the plaintiff if confusion existed, and no damage to the plaintiff. Yet he felt constrained to grant an injunction, saying "Upon such facts, it would appear that an injunction ought not issue, but the law of 'unfair competition' is to the contrary." [8] But in relying on this decision the appellant was evidently unaware that the judgment had been reversed by the Appellate Division and its decision affirmed by the Court of Appeals.[9] This disposition of the case by the appellate courts confirms our view that on this subject the state law is not at odds with our own cases and that under either state or federal authorities affirmance of the judgment on appeal is required.

Judgment affirmed.

ed, with the sanction of the state, is so similar to the name under which the plaintiff conducts its business that the public may be confused, and that some persons may do business with the defendant in the belief that they are dealing with the plaintiff. * * * "
Neva-Wet Corp. v. Never Wet P. Corp., 277 N.Y. 163, 169, 13 N.E.2d 755, 758;
" * * * But the equity power of the court should not be exercised to interfere with freedom of conduct of trade and general business competition, but only to restrain fraud and imposture."

8. Judge Nathan's opinion indicates, 101 N.Y.S.2d at pages 586–587, that he followed what he considered to be the doctrine of Triangle Publications v. Rohrlich, 2 Cir., 167 F.2d 969.

9. Time, Inc., v. Life Color Laboratory, Inc., 279 App.Div. 51, 107 N.Y.S.2d 957, affirmed 303 N.Y. 965, 106 N.E.2d 56.

1. What is called the "federal" rule or is "popularly known as the Hand doctrine" from its original impulse in the Second Circuit, Lunsford, Trade Mark Infringement and Confusion of Source: Need for Supreme Court Action, 35 Va.L.Rev. 214, 217, is discussed in my dissent in S. C. Johnson & Son v. Johnson, 2 Cir.,

CLARK, Circuit Judge (dissenting).

Plaintiff-appellant has had the misfortune—so it seems to me—to come before a panel of this court allergic to the doctrine historically associated with us because of its nurture by our most illustrious judges [1] of protecting trade names against competition which will create confusion as to the source of goods sold under such names. The chance of the assignment calendar which has so operated against plaintiff might as easily have brought it success, to judge by the three most recent cases on this issue before us, the unanimous decision in each instance—two in fact reversing decisions below—of another panel. Miles Shoes, Inc. v. R. H. Macy & Co., 2 Cir., 199 F.2d 602, certiorari denied 345 U.S. 909, 73 S.Ct. 650; Pastificio Spiga Societa Per Azioni v. De Martini Macaroni Co., 2 Cir., 200 F.2d 325; Admiral Corp. v. Penco, Inc., 2 Cir., 203 F.2d 517. These cases all present the issue of confusion as to source, but to my mind no more and even perhaps less sharply than does this.[2] And many earlier cases may be cited, ranging

175 F.2d 176, 182 n. 7; it is in substance the basis of our decision in Admiral Corp. v. Penco, Inc., 2 Cir., 203 F. 2d 517.

2. The Miles case involved competition between retailers of shoes, extended to hosiery by the ultimately successful defendant, where the trade-mark included a distinguishing feature of a growing tree, in addition to some combination of the word "Gro"; further there were several other discovered uses of the word. Pastificio Spiga was a case of competition between manufacturers of a food product where the plaintiff had not entered into the manufacture of the particular product at all in this country. The Admiral case involved competition between a manufacturer of radio and television sets, refrigerators, electric ranges, with a retailer of electric vacuum cleaners and sewing machines; and there were many uses in other lines of the mark "Admiral." The first two were reversals of the decisions below; hence only in the Admiral case were there findings of direct and intentional competition; the decision accepts these findings, but also stresses the broad principles of the Lanham Act.

from the settled view disclosed in Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, L.R.A.1918C, 1039, certiorari denied 245 U.S. 672, 38 S.Ct. 222, 62 L.Ed. 540, and Landers, Frary & Clark v. Universal Cooler Corp., 2 Cir., 85 F.2d 46, through the holding, somewhat questioned, it is true, in the concurrence, of Standard Brands v. Smidler, 2 Cir., 151 F.2d 34; to the majority decisions in such striking cases as La Touraine Coffee Co. v. Lorraine Coffee Co., 2 Cir., 157 F.2d 115, certiorari denied 329 U.S. 771, 67 S.Ct. 189, 91 L.Ed. 663, and Triangle Publications v. Rohrlich, 2 Cir., 167 F.2d 969. True, there are other recent cases reflecting the apparently developing wave which the opinion herewith represents and adequately illustrated by the two cases it particularly cites: Federal Telephone & Radio Corp. v. Federal Television Corp., 2 Cir., 180 F. 2d 250 (in theme, if not necessarily in result), and S. C. Johnson & Son v. Johnson, 2 Cir., 175 F.2d 176 (where I stressed in dissent the effect of the holding in falsifying our earlier finding of wrongdoing, 2 Cir., 116 F.2d 427, by refusing any realistic relief). Differences of view on such issues seem to me not unnatural and, while inconvenient, need no apology. I think we ourselves should recognize the existence of such divergence, just as others are doing, e. g., Lunsford, Trade Mark Infringement and Confusion of Source: Need for Supreme Court Action, 35 Va.L.Rev. 214; Pattishall, Trade Marks and the Monopoly Phobia, 50 Mich.L.Rev. 967, and as the opinion below demonstrates by its careful selectivity in choice of precedents. This natural development could be somewhat ameliorated if we adopted the practice I have urged of sitting *en banc* on special occasions, 28 U.S.C. § 46(c), though obviously it cannot really be controlled until the Supreme Court decides to exercise its constitutional power in these premises.[3] Since it will tend to postpone that day and to increase the confusion of counsel, I think it regrettable that the opinion here tends to

obscure and even to deny this clear-cut schism.

Actually plaintiff's counsel has been so acutely aware of these confusions that he has made some damaging concessions which, however seemingly compelled by the immediate tactical situation, nevertheless are inimical to the proper long-run clarification of this important branch of the law. I refer to his withdrawal on appeal from any immediate attempt to save his client's registered marks and his acceptance of state law as controlling on the issue of unfair competition. As he frankly states, he does it in each instance to obtain the benefit of the more inclusive protection thought to be found in the state precedents. The result shows that his strategy has failed, as I believe it should, no matter how much I may sympathize with the purpose of his endeavor. For, after all, this problem concerns nationwide business and industry; and any attempt to untwine the inextricably intermeshed elements of trade-mark infringement and unfair competition is to transfer the case out of the realm of business practicalities and into that of legal dialectics. We have already given effect to the announced purpose of Congress to establish a national law in the Lanham Act so far as concerns the issue of infringement, 15 U.S.C. § 1114(1). S. C. Johnson & Son v. Johnson, supra, 175 F.2d at page 178; Admiral Corp. v. Penco, Inc., supra. I think we should do the same on the issue of unfair competition, 15 U.S.C. § 1125(a). See Dad's Root Beer Co. v. Doc's Beverages, 2 Cir., 193 F.2d 77, 80; Admiral Corp. v. Penco, Inc., supra. In the controversy between these parties the issue of trade-mark infringement seems to me obviously involved with respect not only to that one of plaintiff's registered marks which is referred to in the majority opinion, but also to another for the name Hyde Park alone—which though expired appears to have been replaced by a new and similar one after the trial below.[4] I think we only confuse and

3. The Court has already adverted to the general problem. Steele v. Bulova Watch Co., 344 U.S. 280, 283, nn. 6, 7, 73 S. Ct. 252.

4. Plaintiff's registration of June 12, 1923, of the words "Hyde Park" alone expired in 1948; according to plaintiff's brief, "An application for a similar registration

store up future trouble by trying to separate issues or postpone full decision here. For the single question here seems to me to come down simply to this: Does the defendant's use of the name confusingly mislead purchasers as to the source of the goods?

This counterstatement of the case will show why I think the enactment of the Lanham Act affords the definite solution of our problem. So far as I can understand myself, I did not feel any particular bias originally in the premises; if anything, I felt equal repugnance for the excesses of American advertising as for the attempts at a "free ride" upon a business reputation built up by others. In other words, the situation was one where a declaration of public policy by the constitutional body having that responsibility should be welcome. And since the background of congressional action included not only the development of the "federal" rule in this and other circuits,[5] but its very careful formulation in one of the most admired of all the restatements, 3 Restatement, Torts, Division 9, and notably §§ 715–740 (1938), I felt and still feel that we should accept the congressional mandates on the whole rather gratefully. The Act was under consideration for several years and by several Congresses. We have already quoted and relied—in the Johnson case, supra—on the final statement of its purpose in the Report of the Senate Committee on Patents, No. 1333, May 14, 1946, U.S.Code Cong.Serv., 79th Cong., 2d Sess., 1946, pp. 1274, 1277, to establish a national law in the field. I think we should also take heed of its statement of "Basic Purposes" and particularly of the one it mentions first, "to protect the public so it may be confident that, in purchasing a product bearing a particular trade-mark which it favorably knows, it will get the product which it asks for and wants to get."[6] I stress this particularly because the vital consumer interest, perhaps the most durable of any in the case, is significantly overlooked in the statement of interests to be protected approvingly adopted by my brethren from the Federal Television case.[7] I think it important that women, when being led to buy the somewhat lower priced goods of defendant, should not be also led to think that they are getting goods backed up with the plaintiff's long established reputation in the garment industry.

was pending at the date of the trial and has since been issued by the Patent Office as Registration No. 558494." Were this case to be reversed, it would seem that these matters could be pleaded in a "supplemental" pleading. F.R. 15(d). The other registration using the name for men's suits in connection with a golfing scene would seem as much infringed here as the "Gro" with a growing tree in the Miles case referred to in my note 2 supra. Here as to either registration it would be necessary to show the defendant's injury to the plaintiff in interstate commerce; but that would follow from the facts presented as to the defendant's use without necessary resort to the additional grounds discussed in Dad's Root Beer Co. v. Doc's Beverages, 2 Cir., 193 F.2d 77, 79–83; see also Sterling Brewing, Inc. v. Cold Spring Brewing Corp., D.C.Mass., 100 F.Supp. 412, with note thereon in 100 U. of Pa.L.Rev. 1075.

5. See my note 1 supra and references given in the cases there cited.

6. The full quotation is as follows:
    "Basic Purposes of Trade-Mark Legislation

"The purpose underlying any trade-mark statute is twofold. One is to protect the public so it may be confident that, in purchasing a product bearing a particular trade-mark which it favorably knows, it will get the product which it asks for and wants to get. Secondly, where the owner of a trade-mark has spent energy, time, and money in presenting to the public the product, he is protected in his investment from its misappropriation by pirates and cheats. This is the well-established rule of law protecting both the public and the trade-mark owner. It is succinctly stated by Mr. Justice Frankfurter in Mishawaka Rubber and Woolen Company v. S. S. Kresge Company [316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381], decided on May 4, 1942:

" 'The protection of trade-marks is the law's recognition of the psychological function of symbols.'

"Your committee believes the proposed bill accomplishes these two broad basic principles." U.S.Code Cong.Serv., 79th Cong., 2d Sess., 1946, p. 1274.

7. In text following note 4 of the opinion supra.

And it is not without significance, too, that the Senate Committee thought to meet head on that specter of monopoly relied on to defeat trade-marks in some of the cases—though not here; this it does in a considerable section, citing, inter alia, decisions of Justice Holmes and Pitney, under the rubric, "Trade-Marks Defeat Monopoly by Stimulating Competition." U.S.Code Cong. Serv., supra at pages 1274, 1275.

As we have often pointed out, most recently in the Admiral case with appropriate citation of authorities, the test is the *likelihood* of confusion, not the number of specific instances of customer mistake which can be piled up. When we approach the case from this standpoint I submit the answer cannot really be in doubt. For here we have the two competitors—the one with long established reputation, the other breaking in—manufacturing and selling in the same way in what seems to me the one industry, referred to in the opinion as "the garment trade." The connection seems to me much closer than, e. g., razor blades and fountain pens, L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272, 273, or refrigerators and sewing machines, Admiral Corp. v. Penco, Inc., supra, or other precedents therein cited. If we take the nine factors bearing on the issue of infringement and the "limitation of protection with reference to kind of goods" so carefully formulated in 3 Restatement, Torts § 731, I suggest that practically everyone argues against limitation here. I shall not take space to go through them *seriatim,* but might stress such high lights as the general likelihood that the goods of one will be mistaken for those of the other, the extent to which the goods are marketed through the same channels, the relation in function between them, the degree of distinctiveness of the trademark or trade name, the length of time of use, etc. I rather deprecate the seizing on small distinctions in the goods—of a kind not quickly occurring to a shopping customer—to justify this form of competition. By making ever finer distinctions between products, we could easily do away with all possibility of protection to an established trade reputation. For instance, I should take this decision for authority to sell any of the new and increasingly popular synthetic materials for summer and sport wear under the name of any of the older manufacturers of woolen suits. But see Rosenberg Bros. & Co. v. Elliott, 3 Cir., 7 F.2d 962; Blek Co. v. Mishawaka Rubber & Woolen Mfg. Co., 57 App.D.C. 149, 18 F. 2d 191; Long's Hat Stores Corp. v. Long's Clothes, 224 App.Div. 497, 231 N.Y.S. 107.

The majority's view of the statutory test seems to me to encourage an element of partiality in this field based on a wholly irrelevant consideration, namely, the trier's response to the apparent fairness or unfairness of the acts of a defendant considered from his own standpoint. This I fear is too subjective a reaction to be anything but a pitfall for the court. Under such a concept it will be comparatively easy for most competitors to shield themselves from any challenge by ostentatious ignorance of their own business and its ramifications until they have successfully appropriated another's title. Meanwhile the confusion of customers and the destruction of another's business can go on with impunity so long as the competitor can show a purity of his own purpose. Further he is aided by substantially a presumption in his favor; for if we believe in a considerable degree of free competition, we must consider his efforts praiseworthy unless carried to ill-defined predatory extremes. I cannot avoid wondering if the defendant is as innocent of what was so generally and so widely known as it is pictured in this record. Even more, I think this too untrustworthy a basis upon which to make decision involving important business relations turn. We have rejected it as late as the other decisions in this term cited above and we should do the same here.

I think the plaintiff entitled to an injunction.