**PURE FOODS, Inc.**

v.

**MINUTE MAID CORP.**

No. 14805.

United States Court of Appeals
Fifth Circuit.

July 30, 1954.

John M. Flowers, Miami, Fla., for appellant.

Ralph L. Chappell, New York City, J. Thomas Gurney, Orlando, Fla., for appellee.

Before HUTCHESON, Chief Judge, RIVES, Circuit Judge, and RICE, District Judge.

RIVES, Circuit Judge.

The defendant [1] is appealing from a judgment in favor of the plaintiff in an action for infringement of a trade-mark registered under the Lanham Act, 15 U.S.C.A. § 1051 et seq. The complaint alleges the manufacture and sale by the plaintiff in interstate commerce to and from the State of Florida of frozen fruit juice concentrates under the trade-mark "Minute Maid", and also alleges the registration of said trade-mark under the Lanham Act, and that the defendant has violated the plaintiff's rights in the trade-mark and has unfairly competed with plaintiff by selling frozen meats under the designation "Minute Made."

Each party is a Florida corporation and jurisdiction, though not questioned in the district court, depends upon the Lanham Act.

The district court made findings of fact [2] and conclusions of law,[3] and en-

---

1. For clarity the parties will usually be referred to as plaintiff and defendant.

2. "Findings of Fact.

"1. The Court has jurisdiction of the subject matter and parties.

"2. On February 19, 1952, plaintiff was granted Certificate of Trade Mark Registration No. 555,105, by the United States Patent Office for frozen concentrated juices of citrus fruits, in Class 46, Foods and Ingredients of Foods, such trademark consisting of the words 'Minute Maid.'

"3. Plaintiff first used such trade mark in commerce on or about April 30, 1946, and has been continuously using same in commerce to identify its products since that date.

"4. Such trade mark was registered with the Secretary of State of the State of Florida by plaintiff on or about December 1, 1949, and had been used by plaintiff or its predecessor in the State of Florida since 1945, and Plaintiff has continuously used such trade mark in said State since that time.

"5. On or about August 13, 1951, the defendant caused to be registered its trade mark, design and insignia with the Secretary of State of the State of Florida, and has continuously used such trade mark since that time. Such trade mark consists, in part, of the words 'Minute Made'.

"6. Defendant has never been granted a certificate of trade mark registration by the United States Patent Office, nor have they ever applied for such certificate.

"7. Plaintiff does not and has never sold frozen meats or frozen meat products and has only sold, under its trade mark, frozen fruit juice concentrates.

"8. Defendant does not and has never sold frozen fruit juice concentrates and has only sold frozen meat or frozen meat products.

"9. The plaintiff has spent large sums in advertising its products under the name 'Minute Maid', its current advertising budget being approximately $1,500,000.00 per year. This advertising has been through various mediums, including radio, television, magazines, newspapers, etc.

"10. The defendant has done very little advertising of its products.

"11. Plaintiff's and defendant's products are sold to the same class of user, to-wit, housewives, and are sold by the same outlets, retail grocery stores. In such stores, generally, both plaintiff's and defendant's products are sold from the frozen food departments and are displayed in the same general location.

"12. Generally, plaintiff's products are distributed to the retail stores through brokers, wholesalers or jobbers of frozen foods, and defendant's products are distributed directly by defendant to the retail stores. Generally, those companies producing and distributing both fresh and frozen meats, channel their frozen meats through frozen food distributors as distinguished from their fresh meat distribution outlets.

"13. The words 'Minute Maid' have acquired secondary meaning in the mind of the public as denoting products produced and sold by the plaintiff.

"14. Defendant's use of the words 'Minute Made' has caused confusion and mistake on the part of purchasers as to the source of origin of defendant's products. The use of such words is likely to continue to cause confusion and mistake in the minds of the general public.

"15. There is no evidence that defendant adopted the words 'Minute Made' with the actual or wilful intention to mislead or confuse the public.

"16. Plaintiff's and defendant's products not being sold in actual competition one with the other, defendant's action has

joined the defendant from selling frozen meats under the designation "Minute Made", but without any accounting for damages or profits.

The specifications of error may be divided as between objections to the jurisdiction and to the judgment on its merits as follows:

1. *Jurisdiction.* The district court lacked jurisdiction because:

(a) The pleadings and proof did not show that the defendant used its alleged infringing trade-mark "in commerce" within the meaning of the Lanham Act.

(b) The claim under the Lanham Act was not so substantial as to support pendent jurisdiction of the related claim for unfair competition.

2. *The Merits.* The district court erred in enjoining the defendant from using its trade-mark because:

(a) The judgment enlarges the plaintiff's trade-mark rights which were limited to fruit juice concentrates.

(b) When the parties are not in competition and neither causes damage to the other, (1) there cannot be confusion or likelihood of confusion as to the origin of the products, (2) the plaintiff has no authority to act as a vicarious champion to protect the public from any confusion.

(c) The words "Minute Made" were descriptive of the products of the defendant.

In defining infringement under the Lanham Act, 15 U.S.C.A. § 1114 begins as follows:

"(1) Any person who shall, in commerce, (a) use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of any registered mark in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services; * * *."

■■ To be guilty of infringement of a registered mark under this statute the defendant must use the infringing mark "in commerce". 15 U.S.C.A. § 1127 provides: "In the construction of this chapter, unless the contrary is plainly apparent from the context—* * * The word 'commerce' means all commerce which may lawfully be regulated by Congress." It is too well settled to require citation of authority that an activity local in nature but which interferes with the free flow of interstate commerce or exercises a substantial economic effect on interstate commerce may be regulated by Congress. Under the rationale of the decision of this Court in Bulova Watch Co. v. Steele, 5 Cir., 194 F.2d 567, the Lanham Act extends jurisdiction to interstate infringement which has a substantial economic effect on interstate commerce. In af-

not deprived the plaintiff of sales of any of its products.

"17. There was no proof of actual monetary damage or injury as a result of defendant's actions to the good will or business of the plaintiff."

3. "Conclusions of Law.

"1. *Confusion, not competition, is the real test* of trade-mark infringement. It is a question as to whether the use of the words 'Minute Made' by defendant is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of defendant's goods.

"2. Defendant, by the use of the words 'Minute Made', has infringed upon the trade-mark of the plaintiff, and plaintiff is

entitled to an injunction restraining such infringement.

"3. Since plaintiff has suffered no loss of profits as a result of defendant's action and has suffered no monetary loss to its good will or business by reason thereof, no accounting of damages is required and an accounting should be denied.

"4. Plaintiff should have and recover of the defendant its costs in this action, but such costs should not include its attorneys' fees, or any expenses of its officers incurred as a result of their attendance at the trial of this cause.

"Counsel for plaintiff will present order consistent herewith."

firming that decision, the Supreme Court recognized that the Lanham Act had broadened the scope of trade-mark jurisdiction. To declare that a trade-mark registered under the Lanham Act is protected from infringement which is purely intrastate but which interferes with the free flow of interstate commerce or has a substantial effect on such commerce is very different from the sweeping extension of the jurisdiction of federal courts to all instances of unfair competition with interstate commerce, though not affecting a Federally registered trade-mark, which was denied in the well considered opinion by Judge Learned Hand in American Auto Ass'n v. Spiegel, 2 Cir., 205 F.2d 771, certiorari denied 346 U.S. 887, 74 S.Ct. 138. In the light of the discussion in that opinion, and of the extreme breadth of extension of federal jurisdiction there attempted, it may well be that a consideration of other parts of the Act requires a restriction upon the broad statutory definition of "commerce" in cases of simple unfair competition, but that definition applies, we think, in cases of infringement of a trade-mark registered under the terms of the Act.

■ We think that the complaint, not attacked in the district court, sufficiently invokes that court's jurisdiction. While it does not charge that the defendant distributes its products in interstate commerce, and does not charge infringement "in commerce" in so many words, it does allege damage to plaintiff's good will established in interstate commerce.

■ The court had jurisdiction of the case actually proved under that complaint. The district court found that the plaintiff's trade-mark "Minute Maid" was registered under the Lanham Act, had been continuously used in commerce for many years, had acquired a secondary meaning in the mind of the public as denoting products sold by the plaintiff, and that defendant's use of the words "Minute Made" had caused confusion and mistake on the part of purchasers as to the source of origin of defendant's products, and that continued use of such words is likely to continue to cause confusion and mistake. We think that the infringement would subject the good will and reputation of the plaintiff's trade-mark to the hazards of the defendant's business, and that the district court had jurisdiction to protect the Federally registered trade-mark.

So holding, it is not necessary for us to consider the question of pendent jurisdiction of the claim of unfair competition within the provisions of 28 U.S. C.A. § 1338(b).[4]

■ Coming to the merits, it is true that an applicant registers a trade-mark in connection with particular goods specified in the certificate of registration, 15 U.S.C.A. §§ 1051, 1057. Plaintiff's registered trade-mark is limited to frozen juice concentrates. The remedies of an owner of a registered trade-mark, however, are not limited to the goods specified in the certificate but extend to any goods on which the use of an infringing mark "is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods". 15 U.S.C.A. § 1114(1). The Lanham Act thus adopts the principle stated in A.L.I. Restatement of the Law of Torts, Vol. III, § 730, pp. 597, 598, § 731.

"One's interest in a trade-mark or trade name came to be protected against simulation, * * * not only on competing goods, but on goods so related in the market to those on which the trade-mark or trade name is used that the good or ill repute of the one type of goods is likely to be visited upon the other. Thus one's interest in a trade-mark

4. "§ 1338(b). The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trade-mark laws."

Compare Pure Oil Co. v. Puritan Oil Co., 2 Cir., 127 F.2d 6; American Auto Association v. Spiegel, supra, 205 F.2d at page 775.

or trade name is protected against being subjected to the hazards of another's business."

A factual issue is necessarily presented as to what goods meet that description. John Walker & Sons v. Tampa Cigar Co., 5 Cir., 197 F.2d 72, 74; Chappell v. Goltsman, 5 Cir., 197 F.2d 837, 838; A.L.I. Restatement of the Law of Torts, Vol. III, Sec. 731, p. 600. In the cases relied on by the defendant,[5] that factual issue was determined in favor of the defendants, while here it has been decided by the district court in favor of the plaintiff.

The appellant-defendant insists, however, that there cannot be confusion or likelihood of confusion as to the origin of the products when the parties are not in competition and neither causes damage to the other. The district court did not find that there was no damage or likelihood of damage, but merely found that "There was no proof of actual monetary damage or injury as a result of defendant's actions to the good will or business of the plaintiff." For that reason, the district court did not order an accounting. The district court further found:

> "Defendant's use of the words 'Minute Made' has caused confusion and mistake on the part of purchasers as to the source of origin of defendant's products. The use of such words is likely to continue to cause confusion and mistake in the minds of the general public."

■ It is difficult for the owner of a trade-mark to prove the amount of his damage or how much of it is caused by the infringement. To authorize preventive relief through the issuance of an injunction proof of actual damage is not necessary, but the likelihood of damage

is sufficient. See 15 U.S.C.A. § 1114(1); A.L.I. Restatement of the Law of Torts, Vol. III, Sec. 744, p. 631; 28 Am.Jur., Injunctions, Sec. 30. Without expressing any opinion on the cases from the Second Circuit establishing what the defendant refers to as the Learned Hand doctrine,[6] that, though the public may be deceived, the plaintiff has no claim to be its vicarious champion, we think that in this case there was sufficient likelihood of damage to the plaintiff to justify enjoining the infringement. Both parties sell frozen food products. Some companies have expanded their businesses so as to include many such products. Plaintiff's frozen fruit juice concentrates and defendant's frozen meats are both purchased by common purchasers, housewives, through common outlets, retail stores, and are displayed in the frozen food departments in those stores, often in locations not far apart. A number of housewives testified to their actual confusion and mistake in buying the defendant's products on their faith in the plaintiff's reputation.

■ The defendant, by motion, requested a finding that the words "Minute Made" were used by the defendant to describe its products, and the district court denied the motion. See 15 U.S.C.A. § 1115(b) (4). Defendant argues that "minute" refers to the time for cooking the meats and "made" means that the meats are processed. While all of defendant's products are processed, they could not truly be described as "made" meat. It took much longer than a minute to cook or prepare for serving most of the defendant's products. Altogether, this, like most of the other questions presented by the appellant-defendant, was a factual issue, and we cannot say that the district court's refusal to make a

5. California Fruit Growers Exchange v. Sunkist Baking Co., 7 Cir., 166 F.2d 971, 975; and Curtis-Stephens-Embry Co. v. Pro-Tek-Toe Skate Stop Co., 8 Cir., 199 F.2d 407, 415.

6. S. C. Johnson & Son v. Johnson, 2 Cir., 116 F.2d 427, Id. 175 F.2d 176, certiorari denied 338 U.S. 860, 94 L.Ed. 527, 70 S. Ct. 103; Hyde Park Clothes v. Hyde Park Fashions, 2 Cir., 204 F.2d 223. See especially the strong dissenting opinion of Judge Clark in the last cited case, 204 F. 2d at page 226, et seq.

finding or its findings of fact are clearly erroneous. Rule 52(a) F.R.C.P., 28 U.S.C.A.

The judgment of the district court is Affirmed.