AVON SHOE CO., Inc., and Haymaker Shoe Corp., Plaintiffs,

v.

DAVID CRYSTAL, INC., Haymaker Sports, Inc., B. Altman & Co., Best & Co., Inc., and John Wanamaker, Defendants.

United States District Court
S. D. New York.

Feb. 9, 1959.

George H. Corey, New York City, for plaintiffs. Corey, Hart & Stemple, New York City, Dayton R. Stemple, Jr., Max Block, Jr., and Ludwig Wilson, New York City, of counsel.

Arnold M. Grant, New York City, for defendants. Lynton & Saslow, New York City, Bernard A. Saslow, Harold A. Axel, and Arthur H. Seidel, New York City, of counsel.

HERLANDS, District Judge.

This trademark litigation involves the problem of non-competing products in adjacent markets where women are the ultimate consumers.

The non-competing products are, on the one hand, plaintiffs' women's casual, comfortable walking shoes of the moccasin type and, on the other hand, defendants' women's fashionable and stylish sportswear apparel, such as dresses, skirts and waists. Certain styles of the plaintiffs' shoes are made and sold under the trademark "Haymakers." Certain styles of the defendants' apparel are made and sold under the trademark "Haymaker."

The controversy concerns chiefly the nature and scope of the parties' respective rights in the trademarks "Haymakers" and "Haymaker." The decision involves the resolution of sharply disputed questions of fact and law presented at a protracted trial, covering 4,239 pages of testimony and hundreds of exhibits.

By spotlighting the following salient features, the issues will be sharply focused:

(1) The plaintiffs first used the name "Haymakers" on their moccasin shoes in 1941, but not until November 15, 1948 did the plaintiffs file an application to register the "Haymakers" mark; and the plaintiff Haymaker Shoe Corp. was not organized until 1950.

(2) Meanwhile, in April 1945, the defendants began to use the mark "Haymaker Sports" and, in December 1945, the mark "Haymaker" on stylish, sophisticated women's sportswear.

(3) The defendants, owned and operated by well-known persons of excellent reputation in the women's apparel

business since 1905, in using the marks "Haymaker" and "Haymaker Sports" acted reasonably, in good faith, without any knowledge of plaintiffs' "Haymakers" shoes, and without any design or intention to get a "free ride" on plaintiffs' mark.

(4) In 1945, when the defendants first began to use "Haymaker Sports" and "Haymaker" on their women's sportswear: (a) the plaintiffs' shoe mark "Haymakers" was not independently conceived but was borrowed from a glove concern, The Daniel Hays Company, Inc. During the period prior to 1945, the word "Haymakers" and variants of that word, if *arguendo* signifying any source of origin, signified two sources of origin, plaintiff Avon Shoe Co., Inc. and The Daniel Hays Company, Inc.; (b) plaintiffs' mark was not well-known; (c) plaintiffs' mark was, to be accurate, not an independent mark to indicate the source of their women's moccasin shoe, but a style or pattern name within plaintiffs' "Avonette" shoe line, and the name "Haymakers" was latched on and subordinated to the better-known and general name of "Avonette"; (d) "Haymakers" shoes had received scant advertising and did not possess a secondary meaning.

(5) In the years following 1945, the defendants made a great and rapid success of their "Haymaker" women's sportswear and conducted extensive and expensive promotional and advertising campaigns, partly on their own account and partly on a cooperative basis with the large department stores and women's specialty shops that marketed their products.

(6) There has been only about a one percent overlap in the sales outlets that sell both plaintiffs' and defendants' products.

(7) There has been virtually no credible proof of any actual consumer confusion as to the source or origin of the plaintiffs' and defendants' products; and such evidence as has been offered by plaintiffs, if believed, would constitute a *de minimis* situation.

(8) The likelihood of mistake, confusion or deception as to the origin or source of plaintiffs' and defendants' products is remote and unsubstantial.

(9) The plaintiffs never had, and now do not have, the intention to make or sell women's sportswear, the product made and sold by defendants. The plaintiffs' expansion into the defendants' field is admitted by plaintiffs to be only a mere possibility and nothing more.

(10) Not until March 1952 did the defendants become aware of the fact that the plaintiffs were marketing "Haymakers" shoes.

(11) The plaintiffs claim that they had no notice of defendants' use of the "Haymaker" trademark on women's sportswear until February 25, 1952.

(12) Plaintiffs' trademark "Haymakers" for shoes was registered by the United States Patent Office for the first time on March 25, 1952, two months after defendants' trademark "Cynthia of Haymaker" had been registered there on January 22, 1952 for items of women's sportswear, and while defendants' trademark application for registration of the trademark "Haymaker" for items of women's sportswear was pending.

(13) June 25, 1953 was the date when plaintiffs' attorneys first sent a "cease and desist" letter to defendants.

(14) During the period of over eight years of concurrent use of the "Haymaker" name prior to the institution of this action, defendants' fashionable line of women's sportswear was more widely publicized than plaintiffs' moccasin shoe. Today, defendants' line of "Haymaker" sportswear is more widely known than the "Haymakers" moccasin shoe.

(15) The sales volume of defendants' "Haymaker" women's sportswear, at all times larger than the sales volume of plaintiffs' "Haymakers" shoe, is now triple the sales volume of the "Haymakers" shoe.

(16) At no time has the name "Haymakers" become associated in the public mind and in the shoe and fashion

and ladies' apparel trades with the plaintiffs.

(17) Plaintiffs have not been damaged in any way by defendants' use of the trademark "Haymaker" on women's sportswear.

(18) Defendants have paid their own way in the promotion and advertising of their fashionable sportswear line and have not ridden on plaintiffs' coattails.

(19) On October 28, 1953—after more than eight years of concurrent use of the "Haymaker" name by plaintiffs and defendants, and after defendants had established a nationwide business running into the millions—plaintiff started this lawsuit.

(20) This is not a suit between competitors. Plaintiffs have never manufactured or sold women's sportswear; defendants have never manufactured or sold women's shoes.

All of the foregoing facts, together with other relevant circumstances and their legal consequences, are elaborated upon in the detailed findings of fact and conclusions of law recited below in this opinion.

The action is based upon alleged infringement of registered shoe and glove trademarks claimed by plaintiffs, and upon unfair competition.

The defendants David Crystal, Inc. and Haymaker Sports, Inc. counterclaim: (1) for a declaration that defendants' trademark "Haymaker" on women's sportswear does not infringe any of plaintiffs' trademark rights; (2) for a direction to the Commissioner of Patents to cancel plaintiffs' said registered shoe and glove trademarks and to dismiss and dissolve the pending opposition of plaintiff Avon Shoe Co., Inc. to the registration of the mark "Haymaker" for items of women's sportswear and to issue registration to defendant Haymaker Sports, Inc. of the mark "Haymaker" pursuant to its pending application; and (3) for costs, disbursements and counsel fees.

Jurisdiction is based on the Lanham Act, 15 U.S.C.A. §§ 1114, 1121, with pendent jurisdiction under 28 U.S.C.A. § 1338(b) as to the claim of unfair competition. Jurisdiction is also based on diversity of citizenship, 28 U.S.C.A. § 1332, with respect to the counterclaim only.

The discussion of the governing legal rules must be prefaced with the observation that we are here dealing with the question of the right to *use* trademarks, as distinguished from the right to *register* them. See Westgate-Sun Harbor Co. v. Watson, 1953, 92 U.S.App.D.C. 341, 206 F.2d 458, 460; Willson v. Graphol Products Co., 1951, 188 F.2d 498, 502, 38 C.C.P.A. 1030.

The controlling principles applicable to the use of similar trademarks on non-competing products have been expounded in a series of leading cases in this Circuit. S. C. Johnson & Son, Inc. v. Johnson, 2 Cir., 1949, 175 F.2d 176, certiorari denied 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527; Federal Telephone & Radio Corp. v. Federal Television Corp., 2 Cir., 1950, 180 F.2d 250; Hyde Park Clothes, Inc. v. Hyde Park Fashions, Inc., 2 Cir., 1953, 204 F.2d 223, certiorari denied 1953, 346 U.S. 827, 74 S.Ct. 46, 98 L.Ed. 351 and G. B. Kent & Sons, Limited v. P. Lorillard Co., D.C.S.D.N.Y.1953, 114 F.Supp. 621, affirmed 2 Cir., 1954, 210 F.2d 953 on Judge Weinfeld's opinion below.

These and similar cases evince a judicial struggle to escape from the literalism of the statute (15 U.S.C.A. § 1114 (1) and to establish equitable principles consistent with Congressional policies. The consumer's confusion over the source or origin of the defendant's goods is the sole criterion of illegality literally prescribed by the statute. This single ingredient of illegality has been judicially diluted into a mixture of equitable considerations.

The courts have had occasion to express varying opinions about the relative weight to be given to the element of actual or likely consumer confusion or deception with respect to the source or origin of the goods and—on the other hand—the weight to be given to such

elements as the good faith and reasonableness of the defendant's conduct; the likelihood of plaintiff's expansion into the adjacent market; whether the defendant is attempting to get a free ride on the mark built up by plaintiff; whether plaintiff's mark has obtained a secondary meaning; the likelihood that the defendant's conduct may dilute the significance of plaintiff's mark or may tarnish or stain plaintiff's mark.

Courts and commentators have argued and analyzed the rival points of view. This process of judicial development has evolved certain rules applicable to trademark cases involving non-competing products in adjacent markets. Some of these rules, summarized as follows, are controlling in the case at bar:

■ 1. There is no doctrine that the first use of a trademark by and of itself gives a power to the first user to prevent its use by others on articles of a different description. Federal Telephone & Radio Corp. v. Federal Television Corp., 2 Cir., 1950, 180 F.2d 250, 251; American Steel Foundries v. Robertson, 1926, 269 U.S. 372, 380, 46 S.Ct. 160, 70 L.Ed. 317.

■ 2. The scope of protection afforded the first user of a trademark depends on the balancing of equities, "weighing the conflicting interests against each other" on the scales of conscience and fair dealing. See S. C. Johnson & Son, Inc. v. Johnson, 2 Cir., 1949, 175 F.2d 176, 179–180, certiorari denied 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527; Federal Telephone & Radio Corp. v. Federal Television Corp., supra; Hyde Park Clothes, Inc. v. Hyde Park Fashions, Inc., supra; Durable Toy & Novelty Corporation v. J. Chein & Co., Inc., 2 Cir., 1943, 133 F.2d 853, 855, certiorari denied 1943, 320 U.S. 211, 63 S.Ct. 1447, 87 L.Ed. 1849.

■ 3. One of the basic factors of great weight is the good faith and reasonableness of the defendant in selecting and adopting his trademark. Hyde Park Clothes, Inc. v. Hyde Park Fashions, Inc., supra; G. B. Kent & Sons, Limited v. P. Lorillard Co., supra.

■ 4. A trademark registration does not carry any statutory presumption of the right to use the mark on noncompeting products because the statute (15 U.S.C.A. § 1051, et seq.) limits the rebuttable presumption to "the goods or services specified in the certificate." 15 U.S.C.A. § 1057(b). See Sears, Roebuck & Co. v. All States Life Insurance Co., 5 Cir., 1957, 246 F.2d 161, 167–168, certiorari denied 1957, 355 U.S. 894, 78 S.Ct. 268, 2 L.Ed.2d 192; California Fruit Growers Exchange v. Sunkist Baking Co., 7 Cir., 1947, 166 F.2d 971, 974. The statute (15 U.S.C.A. § 1114(1) extends protection if there is confusion or likely confusion of source or origin.

■ 5. The statute recognizes that there are situations where the concurrent use of similar trademarks is entirely lawful, and there may be "concurrent registrations" where confusion or mistake or deceit of purchasers as to the origin of defendant's goods is not likely to result from the continued use of the marks. 15 U.S.C.A. § 1052(d).

■ 6. The first user's interests with respect to his reputation and the preemption of adjacent markets are not of equal significance. The "protection to reputation is more substantial" than the right to preempt, although the protection to reputation may "to some degree be measured by what" the subsequent user's "practices have been and are likely to be." Dwinell-Wright Co. v. White House Milk Co., Inc., 2 Cir., 1943, 132 F.2d 822, 825.

■ 7. The first user's rights "in such appendant markets are easily lost." They "must be asserted early, lest they be made the means of reaping a harvest which others have sown." Dwinell-Wright Co. v. White House Milk Co., Inc., supra, 132 F.2d 825.

■ 8. Unless the first user of a trademark "can show that, in order to hold or develop his present business, he must preserve his identity in the disputed market, he cannot rely upon" his expansion interest. S. C. Johnson &

Son, Inc. v. Johnson, 2 Cir., 1940, 116 F.2d 427, 429.

9. The language of 15 U.S.C.A. § 1114 should not be read literally "because to do so would frequently result in great hardship to others, and give to the first user of a mark a wholly unjustified power to preempt new markets." S. C. Johnson & Son, Inc. v. Johnson, 2 Cir., 1949, 175 F.2d 176, 179, certiorari denied 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527.

10. Likelihood of confusion is a relative concept which can be determined only according to the particular circumstances of each case. Mere comparison of the trademarks side by side is not sufficient. The conditions in the market place, not the courtroom, are the controlling factors. Gort Girls Frocks, Inc. v. Princess Pat Lingerie, Inc., D.C.S.D.N.Y.1947, 73 F.Supp. 364. The courts will take judicial notice of "a certain degree of sophistication" of women purchasers. See Warner Brothers Company v. Jantzen, Inc., 2 Cir., 1957, 249 F.2d 353, 354.

11. The "dilution" doctrine has relatively minor, if any, weight in this Circuit. See G. B. Kent & Sons, Limited v. P. Lorillard Co., supra, 114 F.Supp. 630–631, affirmed 2 Cir., 210 F.2d 953; Champion Paper & Fibre Company v. National Association of Mutual Insurance Agents, 1957, 102 U.S.App.D.C. 10, 249 F.2d 525, 526. The Lanham Act rejects the dilution doctrine as a basis for relief in trademark cases in placing the burden on the trademark owner claiming infringement at least to prove the likelihood of confusion. 15 U.S.C.A. § 1114(1).

In the light of the foregoing principles, the plaintiffs are clearly not entitled to prevail herein. The weight of the credible evidence fails to sustain plaintiffs' contentions. On the contrary, the proofs convincingly resolve in favor of the defendants all of the issues of fact made material by the rules of law already outlined.

In addition, the defendants have established a statutory defense under the Lanham Act, 15 U.S.C.A. § 1115(b) (5). This statute provides, in substance, that a mark which "has become incontestable" under its provisions (§ 1065) may not be enforced where "the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party * * * from a date prior to the publication of the registered mark" under the Lanham Act. Cf. Forstmann Woolen Co. v. Murray Sices Corporation, D.C.S.D.N.Y.1950, 10 F.R.D. 367, 370.

The shoe marks claimed by plaintiffs, registered in 1952 and 1953 ("Haymakers," Reg. No. 556,671, March 25, 1952; "Haymakers By Avon," Reg. No. 511,010, February 24, 1953) have not become incontestable because of this pending lawsuit. 15 U.S.C.A. § 1065(2). "Nevertheless, if a trade-mark owner's use of his *incontestable* mark is subject to the defense specified in § 1115, *a fortiori*, the plaintiff's mark, which lacks the status of *incontestability*, must be subject to the same defense." (Emphasis supplied.) Medina, J., in Forstmann Woolen Co. v. Murray Sices Corporation, supra.

The defendants' "Haymaker" trademark on women's sportswear was adopted by defendants without knowledge of the claimed prior use of plaintiffs' "Haymakers" shoe mark, and has been continuously used from 1945, over six years prior to the publication of the "Haymakers" registered shoe marks on December 4, 1951 and December 2, 1952 (Defendants' Exhs. D–9, E–9). Consequently, defendants have a statutory defense to the claim of trademark infringement of the registered shoe marks claimed by plaintiff Avon Shoe Co., Inc.

The proviso in the statute that "this defense * * * shall apply only for the area in which such continuous prior use is proved" (15 U.S.C.A. § 1115 [b] [5]) is satisfied by defendants' nationwide use of their "Haymaker" mark

on women's sportswear. Cf. Aluminum Fabricating Company of Pittsburgh v. Season-All Window Corp., D.C.S.D.N.Y. 1957, 160 F.Supp. 41, 46, affirmed 2 Cir., 1958, 259 F.2d 314.

In the case at bar, defendants adopted the mark "Haymaker" prior to the publication of plaintiffs' registered marks, "Haymakers" and "Haymakers By Avon," and without knowledge of plaintiffs' claimed prior use. The defense of concurrent use is available in this case and a bar to the relief sought by plaintiffs.

Plaintiffs derive no benefit from the fact that the glove trademarks claimed to have been acquired by assignment on October 1, 1953 were registered in 1940 and 1942 under the Act of February 20, 1905, prior to the adoption of defendants' "Haymaker" trademark for women's sportswear. Plaintiffs acquired no right or title to these registered glove marks because, as will now be shown, these were abandoned marks invalidly transferred to plaintiffs by an assignment in gross.

The registered glove marks are "The Haymaker" (Reg. No. 380,719, August 27, 1940) and "Haymaker" (Reg. No. 393,642, February 24, 1942).

October 1, 1953, less than a month prior to the institution of this suit, plaintiff Avon Shoe Co., Inc. purchased the registered "Haymaker" glove trademarks from The Daniel Hays Company, Inc. for $1,000. This was an attempt to buttress plaintiffs' claim to preempt the broad field of women's apparel and accessories for the "Haymakers" mark which was being used by plaintiffs only on their moccasin shoes and matching leather handbags.

This assignment originally ran in favor of Avon Shoe Co., Inc., a non-existent New York corporation (Plaintiffs' Exhs. 36, 170). In view of defendants' challenge of this assignment on the motion for a temporary injunction, plaintiff Avon Shoe Co., Inc. obtained an initialled change on the assignment, dated December 15, 1953, to reflect plaintiff Avon Shoe Co., Inc. as the assignee (Plaintiffs' Exh. 37).

Although the assignment stated that the glove trademarks were assigned "together with that part of the good will of the business in connection with which the said marks are used," the assignment was an assignment in gross.

The "Haymaker" glove trademark had been first used in 1936 and applied to only one model of men's gloves. The trial testimony leads to the inference that The Daniel Hays Company, Inc. had discontinued use of the glove trademarks by 1947. The statute (15 U.S.C.A. § 1127 (a)) creates a prima facie presumption of abandonment on the basis of "nonuse" of a trademark for two consecutive years. Cf. Huber Baking Company v. Stroehmann Brothers Company, 2 Cir., 1958, 252 F.2d 945.

The registered glove trademarks were, on October 1, 1953, when they were purchased, abandoned marks, i.e., marks whose use had been "discontinued with intent not to resume." 15 U.S.C.A. § 1127 (a). As abandoned marks, the glove trademarks were subject to cancellation by the Patent Office or the courts (15 U.S.C.A §§ 1064(c), 1119); and, hence, were invalid. In so far as The Daniel Hays Company, Inc. is concerned, the invalid assignment in gross to plaintiffs was further proof of its abandonment of the registered glove trademarks. See Eiseman v. Schiffer, C.C.S.D.N.Y.1907, 157 F. 473, 476.

If it be assumed *arguendo* that the glove trademarks were valid at the time of their purchase, plaintiff Avon Shoe Co., Inc. did not acquire title to, or rights under, those glove marks. Trademarks, unlike patents or copyrights, cannot be freely bought or sold. United Drug Co. v. Theodore Rectanus Co., 1918, 248 U.S. 90, 97, 39 S.Ct. 48, 63 L.Ed. 141.

The Lanham Act provides that a trademark may be legally assignable only "with the good will of the business in which the mark is used, or with that part of the good will of the business con-

nected with the use of and symbolized by the mark, * * *." 15 U.S.C.A. § 1060. Since good will is inseparable from the business with which it is associated, this requirement of the transfer of good will restates the common-law rule that a trademark can only be transferred with the business or part of the business which it symbolizes.

Without the transfer of some business with which the mark has been used, the assignment is a void assignment in gross and conveys no title to the assignee. See Landers, Frary & Clark v. Universal Cooler Corporation, 2 Cir., 1936, 85 F.2d 46, 47; President Suspender Co. v. MacWilliam, 2 Cir., 1916, 238 F. 159, 161, certiorari denied 1916, 243 U.S. 636, 37 S.Ct. 399, 61 L.Ed. 941; Macmahan Pharmacal Co. v. Denver Chemical Mfg. Co., 8 Cir., 1901, 113 F. 468, 474–475; Nettie Rosenstein, Inc. v. Princess Pat, Ltd., 1955, 220 F.2d 444, 453, 42 CCPA 806; In re Jaysee Corset Co., D.C.S.D.N.Y.1911, 201 F. 779; Stern Apparel Corporation v. Raingard, Inc., D.C.S.D.N.Y.1949, 87 F.Supp. 621.

The assignment of October 1, 1953 purported to include "that part of the good will of the business" in connection with which the registered glove marks were used. But the trial testimony convincingly showed that no part of the business of the glove firm was transferred with the assignment. Indeed, there was no business to transfer. At the time of the assignment, The Daniel Hays Company, Inc. was not selling gloves under the "Haymaker" trademark and had not done so for at least six years.

The "Haymaker" mark was used by The Daniel Hays Company, Inc. to designate a particular model of *men's* glove. Beginning in March 1954, and until November 1, 1956, plaintiffs used the glove trademarks on *women's* gloves, a product different from the men's glove which the glove trademarks symbolized. These facts alone render the assignment invalid.

The inexorable conclusion is that the assignment of October 1, 1953 was an invalid assignment in gross, which passed no rights to plaintiffs. In any event, by November 1, 1956, plaintiffs had discontinued the sale of gloves under the "Haymakers" mark, after making a minuscule amount of sales, the transparent purpose of which was to try to bolster plaintiffs' flimsy claims of preemption in the broad field of women's apparel and accessories.

In "balancing the equities," it is appropriate to consider some aspects of the plaintiffs' own conduct with reference to the subject-matter of this litigation. The defendants contend that plaintiffs' registered shoe trademarks are invalid (a) because of false statements under oath in the applications for registration of those marks and (b) by reason of abandonment. Aside from the question of invalidity, the false statements and alleged abandonment have a bearing upon an equitable appraisal of plaintiffs' trademark practices.

There is no doubt about the fact that the plaintiffs made false statements in their applications for trademark registration as to the description of the goods on which the trademark was then being used, and as to the dates of first use and first use in interstate commerce.

(1) In Avon Shoe Co., Inc.'s application (filed November 7, 1950 and amended January 22, 1952), it was stated that the applicant "has adopted and is using the trademark ["Haymakers"] shown on the accompanying drawing, for Men's, Women's and Children's Shoes of Leather, Suede, Canvas, Fabric or Composition and Combinations thereof." This statement was false. The only "Haymakers" shoe which plaintiffs manufactured and sold at any time was a women's shoe made of leather or suede. Plaintiffs never marketed under the name "Haymakers," men's shoes or children's shoes or shoes of canvas, fabric, composition or combinations thereof.

Moreover, in Avon Shoe Co., Inc.'s application (filed February 23, 1953) for registration of the "Haymakers By Avon," it was stated that the applicant "has adopted and is using the trademark

**302**

["Haymakers By Avon"] * * * for 'Men's, Women's and Children's Shoes of Leather.'" This statement was false because plaintiffs never manufactured or sold men's and children's shoes under the mark "Haymakers By Avon."

(2) The application of Avon Shoe Co., Inc. (filed November 7, 1950 and as amended January 22, 1952) stated that the "Haymakers" trademark "was first used in January 1941, and was first used in interstate commerce * * * in January 1941." The November 7, 1950 application before amendment had stated that the date of first use of "Haymakers" was July 1942 and that the date of first use in interstate commerce was September 27, 1943. On the state of the record herein—which contains unclear evidence in plaintiffs' behalf as to just when "Haymakers" was first used as an independent trademark by plaintiffs and was so first used by plaintiffs in interstate commerce—the Court has found that such first uses occurred sometime before 1945, probably in the year 1942.

Under 15 U.S.C.A. § 1119, the Court has permissive and equitable power to cancel a mark. The Court will not order the cancellation of plaintiffs' marks. Nevertheless, the Court will give some, though not decisive, consideration to the false statements referred to above in connection with the balancing of the equities.

As to the matter of "abandonment" urged by defendants, it is to be noted that, under 15 U.S.C.A. §§ 1064(c), 1127 (b), a mark shall be deemed to be "abandoned" "when any course of conduct of the registrant, including acts of omission as well as commission, causes the mark to lose its significance *as an indication of origin.*" (Emphasis supplied.) The evidence showed that plaintiffs have authorized and permitted Rosart Handbag Company to manufacture handbags which are marketed under the trademark "Haymakers by Rosart." The word "Rosart" is more prominent than the words "Haymakers by." Consequently, the "Haymakers" mark identified Rosart Handbag Company as a source of "Hay-

maker's goods. Previously, plaintiffs advertised "Haymakers 'matchmate' bags by Emmet of California" (Plaintiffs' Exh. 18).

The Court, however, regards such evidence, not as establishing abandonment, but rather as indicating (together with the other evidence in the record) that "Haymakers" did not obtain a secondary meaning as indicating that plaintiffs were the exclusive source or origin of goods marked with the name "Haymakers." Such evidence, moreover, has some significance in evaluating the equitable merits of plaintiffs' claim for exclusive preemption of the name "Haymakers."

There are other elements that must also be considered in "balancing the equities." Reference has already been made to the fact that there was no originality in plaintiffs' adoption of the "Haymakers" name for their women's moccasin shoe, as it had been borrowed from The Daniel Hays Company, Inc. in an effort to capitalize on the registered glove marks of that firm.

In addition, in the early advertisements of the "Haymakers" shoe, the "Haymakers" shoe name was repeatedly misrepresented to the public as having been registered in the United States Patent Office (e.g., Plaintiffs' Exhs. 80A, 80B, 132, 133). Plaintiffs also imprinted the trademark registration legend ® on handbags of another manufacturer (Roger Van S) sold by plaintiffs under the "Haymakers" mark, although neither plaintiffs nor the handbag manufacturer had a registration of that mark for handbags (Defendants' Exh. DDD, s.m.pp. 655–656).

Plaintiffs were guilty of inexcusable delay before instituting this action. While this Court does not find it necessary to conclude that such delay is sufficient to constitute laches as a legal defense to defendants, the delay is another element to be considered in balancing the equities.

Furthermore, it appears clearly that the defendants' "Haymaker" women's sportswear line has not stained or tarnished whatsoever the reputation of the

"Haymakers" shoe. There is a complete absence of any credible proof that defendants caused any harm or injury to plaintiffs.

Finally, it is undisputed that plaintiffs at no time even contemplated entering into the women's sportswear or dress field.

The irresistible conclusion is that the equities weigh heavily in defendants' favor.

The following formal findings and conclusions are supplemental to and in elaboration of the findings and conclusions already expressed in the foregoing portion of the Court's opinion.

Findings of Fact

1. Plaintiff Avon Shoe Co., Inc. is a New Jersey corporation, incorporated in 1935. Plaintiff Haymaker Shoe Corp. is a Massachusetts corporation, incorporated in 1950. The latter corporation has never been licensed to do business in New York. It is a subsidiary of plaintiff Avon Shoe Co., Inc.

2. Plaintiffs manufacture and sell a moccasin type shoe in four models under the mark "Haymakers." They have never manufactured a general line of women's shoes under that mark. The "Haymakers" shoe is a comfortable walking shoe. It is not a style or fashion shoe. The "Haymakers" shoe, in addition to being advertised in national women's magazines, was advertised in nursing journals. The retail price range of this shoe is now between $15.95 and $16.95, which is in the middle price bracket. In some department stores, the "Haymakers" shoe was sold in the budget or moderate-priced, as distinguished from the better, shoe departments.

3. Defendants David Crystal, Inc. and Haymaker Sports, Inc. are New York corporations, incorporated in 1921 and 1945, respectively. Haymaker Sports, Inc. is a subsidiary of David Crystal, Inc.

Haymaker Sports, Inc. manufactures and sells an extensive line of women's sportswear, including blouses, shirts, skirts, dresses, suits, playsuits and miscellaneous separates at a retail price beginning with $5.50 for the least expensive summer sleeveless shirt, and ranging to $69.95 for the most expensive sportswear items.

The "Haymaker" women's sportswear line is a fashionable and stylish line in the middle to upper-middle price bracket, reflecting fine workmanship and quality fabrics. The women purchasers of this sportswear line are, on the average, choosy, selective and sophisticated.

4. Defendants B. Altman & Co., Best & Co., Inc., and John Wanamaker are leading department stores which sell "Haymaker" women's sportswear. They do business in the Southern District of New York.

5. Plaintiffs and defendants are not competitors. Plaintiffs have never manufactured or sold women's sportswear, nor have they planned to do so. Defendants have never manufactured or sold women's shoes.

6. The defendant firms are not newcomers in the women's apparel field. They are the outgrowth of a business begun in 1905 by David Crystal. They are regarded by the trade and the purchasing public as among the outstanding manufacturers of women's suits, dresses and sportswear, with an excellent reputation for quality, style, and integrity.

7. Defendant David Crystal, Inc. first used the word "Haymaker" in an advertisement in the May 1943 issue of Harper's Bazaar. This advertisement was prepared by David Crystal, Inc.'s advertising agency without knowledge of any prior use of that word by plaintiff Avon Shoe Co., Inc.

On April 2, 1945, defendant Haymaker Sports, Inc. was incorporated under that name under the laws of the State of New York.

On May 2, 1945, defendants filed an application to register the trademark "Haymaker Sports."

From April 1945 through November 1945, defendant Haymaker Sports, Inc. marketed its women's sportswear with

hang tags containing the mark "Haymaker Sports."

Beginning in December 1945 and continuously to date, defendants' sportwear has been marketed on a national scale, with woven labels bearing the trademark "Haymaker," which was adopted in good faith without knowledge of the similar shoe name.

The records of "Haymaker" label purchases from October 1945 through the middle of 1957 show purchases of 4,256,-638 labels.

The advertising and publicity of defendants' "Haymaker" women's sportswear from 1945 to date has been extensive and on a national scale, consisting of editorial comments and advertisements in such national style magazines as Harper's Bazaar, Vogue, Glamour, Charm, Mademoiselle and others, and of newspaper advertisements throughout the United States, beginning with an advertisement of Saks Fifth Avenue in The New York Times on May 23, 1945. In addition, defendants' "Haymaker" sportswear was publicized by promotional announcements, promotional circulars, matrices, newspaper articles, fashion shows, and radio advertising.

The "Haymaker" women's sportswear line found popular acceptance upon its introduction in 1945; developed an excellent reputation for quality and style; and rapidly became known to the public, which requested "Haymaker" sportswear by name.

Until 1953 (when fabrics became more plentiful and competition became keener), large advertising expenditures on the part of defendants themselves were not necessary to promote the "Haymaker" sportswear line. The "Haymaker" sportswear line was, however, from its very beginning in 1945, extensively advertised and featured by department stores and women's specialty shops all over the country, and later by fabric mills which supply defendants.

The net advertising expenses of defendant Haymaker Sports, Inc. for the fiscal years ending March 31, 1949 through March 31, 1955, aggregated $218,786.88.

8. Plaintiff Avon Shoe Co., Inc. was not the first user of the mark "Haymakers" or "Haymaker," nor even the first user in the broad field of wearing apparel and accessories, nor did it conceive or originate that word as a mark for women's shoes.

J. G. Peppard Seed Company, Inc. began using the word "Haymaker" as a trademark for farm seeds in 1928. In 1936, The Daniel Hays Company, Inc. began using the word "Haymaker" as a trademark for gloves. The Daniel Hays Company, Inc. became the owner of the trademark "Haymaker" for gloves registered in the United States Patent Office on February 24, 1942 (Reg.No.393,642) and the purported owner, by an assignment in gross dated July 10, 1941, of the trademark "The Haymaker" for gloves registered to C. D. Osborn Co., on August 27, 1940 (Reg.No.380,719).

It was Saks Fifth Avenue which suggested that plaintiffs' moccasin shoe be called "Haymakers." At the request of that department store sometime prior to 1945, plaintiffs obtained consent from The Daniel Hays Company, Inc. to use the "Haymakers" name.

In 1945, when defendants adopted the name "Haymaker" as their trademark for women's sportswear, the name "Haymakers"—then used by plaintiffs in connection with their women's moccasin shoe—was a style or pattern name and not a trademark symbolizing source or origin; and "Haymakers" was a name generally latched on or tacked on to "Avonette," the principal trademark of plaintiff Avon Shoe Co., Inc., to take advantage of the good will of the name of "Avonette."

9. On May 2, 1945, a month after the incorporation of defendant Haymaker Sports, Inc.—and over three years before the first application to register the mark "Haymakers" for shoes was filed—defendant David Crystal, Inc. filed an application in the United States Patent Office to register the trademark "Haymaker Sports" for ladies' and misses'

dresses, coats, dress and jacket ensembles, etc. This application was rejected on July 27, 1945.

Defendants were not advised by their trademark service, Design Patent Service, of this rejection, and at least until early 1949 were under the mistaken impression that this trademark had been registered.

10. On May 14, 1949, defendant David Crystal, Inc. filed an application in the United States Patent Office through the same Design Patent Service to register the trademark "Haymaker" for ladies' and misses' dresses, skirts, coats, dress and jacket ensembles, suits, blouses, slacks, coveralls and jumpers. The United States Patent Office declined to register defendants' "Haymaker" trademark unless a consent thereto was secured from The Daniel Hays Company, Inc., the purported owner of the two "Haymaker" registered trademarks for gloves.

On February 18, 1952, defendant David Crystal, Inc. wrote to The Daniel Hays Company, Inc. requesting such consent. By letter dated March 7, 1952, the latter firm advised defendant David Crystal, Inc. that a number of years previously, at the request of Saks Fifth Avenue, consent had been given to plaintiff Avon Shoe Co., Inc. to use the "Haymaker" glove trademark on shoes, and further stated that The Daniel Hays Company, Inc., would not object to giving the requested consent if this was agreeable to plaintiff Avon Shoe Co., Inc.

Not until the receipt of this letter of March 7, 1952, were defendants aware that shoes were being marketed under the "Haymaker" mark.

At the request of plaintiffs, The Daniel Hays Company, Inc. withheld its consent. On June 30, 1953, defendants' 1949 application was finally rejected by the Patent Office.

11. On January 22, 1952, a trademark registration (Reg.No.554,042) was issued by the United State Patent Office to defendant David Crystal, Inc. for the trademark "Cynthia of Haymaker" on ladies' dresses, skirts, suits and blouses.

12. On November 15, 1948, plaintiff Avon Shoe Co., Inc., filed an application in the United States Patent Office through the above-mentioned Design Patent Service to register the mark "Haymakers" for ladies' and misses' shoes. This was the same Design Patent Service which, on behalf of defendant David Crystal, Inc., had filed the application of May 2, 1945 to register the trademark "Haymaker Sports" and the application of May 14, 1949 to register the trademark "Haymaker," both for items of sportswear.

The Design Patent Service, at the very same time, was processing both the November 15, 1948 application of plaintiff Avon Shoe Co., Inc. to register the mark "Haymakers" for women's shoes and the May 14, 1949 application of defendant David Crystal, Inc. to register the trademark "Haymaker" for women's sportswear.

13. Avon Shoe Co., Inc., purporting to be a New York corporation and not plaintiff Avon Shoe Co., Inc., a New Jersey corporation, on November 7, 1950, filed an application to register the mark "Haymakers" for shoes, and abandoned the previous application (Ser.No.568,-776) of November 15, 1948.

This new (1950) application was at first rejected by the Patent Office because of the prior, registered glove marks. In order to overcome this rejection, plaintiffs ascribed a narrow scope to their mark, stating that gloves and shoes were sufficiently dissimilar to preclude confusion. As a result of this admission and a subsequent letter of consent from The Daniel Hays Company, Inc. and pursuant to sworn allegations as to dates of first use and first use in interstate commerce of the mark "Haymakers," and as to the nature of the goods on which the "Haymakers" mark was then being used, the said Avon Shoe Co., Inc. obtained registration in the United States Patent Office on March 25, 1952 of the mark "Haymakers" for "men's, women's and children's shoes of leather, suede, canvas,

fabric or composition, and combinations thereof" (Reg.No.556,671). This mark was published in the Official Gazette of the United States Patent Office on December 4, 1951 pursuant to 15 U.S.C.A. § 1062(a). This registration was corrected on March 2, 1954 to reflect the State of incorporation of the registrant.

On February 24, 1953, the said Avon Shoe Co., Inc. obtained registration in the United States Patent Office of the mark "Haymakers By Avon" for "men's, women's and children's shoes of leather" (Reg.No.571,010) on the basis of an application filed therefor on October 8, 1951. This mark was published in the Official Gazette of the United States Patent Office on December 2, 1952 pursuant to 15 U.S.C.A. § 1062(a). This registration was corrected on March 2, 1954 to reflect the State of incorporation of the registrant.

14. On October 1, 1953 (less than a month prior to the institution of this suit), the said Avon Shoe Co., Inc.—in an attempt to bolster its position in this action—procured from The Daniel Hays Company, Inc. for $1,000, a purported assignment of the latter's two registered glove trademarks, "Haymaker" and "The Haymaker." Although the assignment states that the glove trademarks were assigned "together with that part of the good will of the business in connection with which the said marks are used," the assignment was an assignment in gross. At the time of the October 1, 1953 assignment, The Daniel Hays Company, Inc. was not using the "Haymaker" glove trademarks; indeed, had not been using them for at least six years; and no merchandise, list of customers or glove designs and specifications were transferred to said Avon Shoe Co., Inc.

The aforesaid October 1, 1953 assignment was corrected and resworn to on December 15, 1953.

15. The said Avon Shoe Co., Inc. was incorporated under the laws of the State of New York on December 30, 1926; was dissolved by proclamation on December 14, 1941; and, at the time of the issuance of the said shoe trademark registrations and the execution of the said assignment, was a non-existent corporation.

16. In the November 7, 1950 application of the said Avon Shoe Co., Inc., as amended on January 22, 1952, for registration in the United States Patent Office of the trademark "Haymakers" (which eventuated in Reg.No.556,671), the applicant stated that it "has adopted and is using the trademark shown on the accompanying drawing, for Men's, Women's and Children's Shoes of Leather, Suede, Canvas, Fabric or Composition and Combinations thereof," and that the said trademark "was first used in January 1941, and was first used in interstate commerce which may lawfully be regulated by Congress in January 1941." In fact, the trademark "Haymakers" was used only on women's shoes of leather and suede.

Avon Shoe Co., Inc. began to manufacture a moccasin shoe sometime in 1940. Avon Shoe Co., Inc. first manufactured the moccasin shoe in the form of a pump (illustrated by Exh. 51); and, approximately a year later, manufactured the moccasin shoe in the form of an oxford (illustrated by Exh. 52).

Commencing in 1941 and continuously thereafter, Avon Shoe Co., Inc. sold some shoes on which was imprinted the style-name "Haymakers" in gold letters on the sock liner of said shoes. Sometime in 1942, shoes on which was imprinted the trademark "Haymakers" were sold.

The style-name "Haymakers" was first printed on the cover and the sides of the shoe boxes used in connection with the sale of the moccasin style shoes of Avon Shoe Co., Inc. These shoe boxes carried the printed name "Haymakers" in large type and, in relatively small type, the phrase "the modern Moccasin" on the cover and each side. On these shoe boxes there also appeared the copyright legend: "© Frank C. Mayer Co. Inc., Bklyn and Lawrence, U.S.A."

17. In the October 8, 1951, application of the Avon Shoe Co., Inc. for registration in the United States Patent Office of the trademark "Haymakers By Avon"

(which eventuated in Reg.No.571,010), the applicant stated that it "has adopted and is using the trademark shown on the accompanying drawing, for 'Men's, Women's and Children's Shoes of Leather.'" This statement was incorrect to the extent that the trademark "Haymakers By Avon" was used only on women's shoes.

18. Plaintiffs do not manufacture handbags; but beginning after September 30, 1952, plaintiffs have sold on a commission basis a small quantity of leather handbags made by handbag manufacturers, which handbags match the "Haymakers" shoe. These limited sales of women's leather handbags were an accommodation to those stores which desired to display matching leather handbags, but there is no other item which stores want as an accommodation item with shoes. Some of these handbags manufactured by handbag manufacturers contained the "Haymakers" name thereon, others contained the "Haymakers" name coupled with the name of the handbag manufacturer. Handbags manufactured by Rosart Handbag Company and now being sold on a commission basis, bear the trade "Haymakers by Rosart," with the word "Rosart" more prominent than the words "Haymakers by." Previously, plaintiffs advertised "Haymakers 'matchmate' bags by Emmet of California." As a result of the foregoing, plaintiffs' mark has lost any possible significance as an indication of source or origin.

19. Plaintiffs first sold women's gloves under the "Haymakers" trademark in March 1954, five months after institution of this lawsuit. Since November 1, 1956, gloves were no longer an item of sale by plaintiffs, who found it impossible to match glove leathers with the leather used in the manufacturing of the "Haymakers" shoe, so far as color was concerned. The amount of these glove sales for the four-year period aggregated only $10,787.24.

20. On October 20, 1953, defendant Haymaker Sports, Inc. filed an application (No.655,057) for registration of the mark "Haymaker" on women's shirts, skirts, blouses, shorts, jackets, dresses, suits and slacks. On March 12, 1954, the United States Patent Office—notwithstanding the prior "Haymaker" shoe and glove registrations—found that:

"A search of the Office records fails to show that the mark, when applied to applicant's goods, is confusingly similar to any registered mark"

and passed the said mark for publication in the Official Gazette of June 15, 1954, on which date the said mark was so published.

Registration of the said mark has not issued and application is still pending, only because of the opposition thereto filed by plaintiff Avon Shoe Co., Inc. on July 13, 1954 and the staying of the whole matter by the Patent Office pending the outcome of this suit.

No other person has filed an opposition to the registration of the said mark; and the period of thirty days after the date of the said publication within which to file any such opposition pursuant to 15 U.S.C.A. § 1063 has expired.

The opposition of plaintiff Avon Shoe Co., Inc. to the registration of defendants' "Haymaker" mark for women's sportswear is inconsistent with the plaintiffs' position (taken by said plaintiff before the Patent Office in its said applications of November 15, 1948 and November 7, 1950, to register the mark "Haymakers" for shoes) that there is no confusing similarity between the mark "Haymaker" on gloves and the mark "Haymakers" on shoes, that under the Lanham Act many trademarks have been issued in the same class but on different articles of clothing, and that there would never be any consumer confusion because shoes and gloves are sold in entirely different stores or different departments.

21. The net sales to department stores and women's specialty shops of "Haymaker" women's sportswear—hang-tagged with the mark "Haymaker Sports" for the period April 1945 through November 1945 and labelled with the mark "Haymaker" from De-

cember 1945 through March 1958—were $22,780,262.47. These net sales had a retail value of approximately $37,967,877.45.

22. The stores in which defendants' "Haymaker" sportswear is sold cover a wide range, from the finest women's specialty shops and department stores (such as Bergdorf Goodman in New York City, Lord & Taylor in New York City, Neiman-Marcus in Dallas, Burdine's in Miami, Garfinkel's in Washington, D. C., and Kreeger's in New Orleans) to smaller specialty shops in small towns.

Plaintiffs' shoe is sold only to about 325 store accounts, as compared with 4,400 store accounts where defendants' "Haymaker" women's sportswear is sold.

The "Haymakers" shoe is sold in shoe stores and booteries where no women's sportswear is sold; and the "Haymaker" women's sportswear is sold in women's specialty shops where no shoes are sold.

In addition, the "Haymakers" shoe is sold in department stores which do not sell the "Haymaker" women's sportswear line; and, similarly, "Haymaker" sportswear is sold in department stores which do not sell the "Haymakers" shoe.

In a small number of department stores and women's specialty shops both the "Haymakers" shoe and the "Haymaker" line of women's sportswear are sold, but in these stores and shops women's shoes and sportswear are selected and ordered by different merchandise buyers and are sold in different departments. Among this group of stores are found some of the finest stores in the United States, including Lord & Taylor in New York City and Neiman-Marcus in Dallas.

The percentage of overlap in the same marketing channels used by both plaintiffs and defendants is less than one percent.

From the beginning of their sales of "Haymakers" shoes, plaintiffs sold such shoes to some leading stores; and where so sold, plaintiffs limited the sale generally to one such store customer in each city. Plaintiffs made fair trade agreements with such customers in order to maintain plaintiffs' retail price. However, "Haymakers" shoes were sometimes sold at reduced prices.

23. During the period May 17, 1945 to May 17, 1946, defendants' "Haymaker" sportswear line was sold to 1,006 retail stores geographically distributed in every state, the District of Columbia, Hawaii, and Puerto Rico, including the finest department stores and women's specialty shops.

During that period, there were only about 60–70 retail stores purchasing the "Haymakers" shoe, of which ten percent were booteries.

24. Out of the 1,006 stores which sold "Haymaker" sportswear in 1945–1946, only five—Saks Fifth Avenue in New York City, City of Paris in San Francisco, R. H. Stearns in Boston, Hutzler Bros. in Baltimore, and Gimbel Bros. in Pittsburgh—were previously selling the "Haymakers" shoe.

The "Haymaker" sportswear was introduced in 1945–1946 into such leading stores as Lord & Taylor in New York City, which did not sell the "Haymakers" shoe until December 1950; Bonwit Teller in New York City, which did not sell the "Haymakers" shoe until after 1950; Neiman-Marcus in Dallas, which did not sell the "Haymakers" shoe until after 1949; Garfinkel's in Washington, D. C., which did not sell the "Haymakers" shoe until 1947; Kreeger's in New Orleans, which did not sell the "Haymakers" shoe until 1948–1949; and Frost Bros. in San Antonio, Texas, which did not sell the "Haymakers" shoe until 1953.

25. During the period of eight years prior to the institution of this suit, defendants, by dint of their own efforts, built up a substantial business and good will in their "Haymaker" women's sportswear and created a prestige and demand for that sportswear among women purchasers and stores supplying them.

Defendants' women's sportswear is regarded by some of the finest and largest department stores and women's specialty

shops in the United States as among the outstanding lines of women's sportswear.

26. During the first year of production, 1940, the plaintiff Avon Shoe Co., Inc. produced moccasin shoes at the rate of approximately 75 to 100 pairs a day, which increased to approximately 200 pairs a day in 1943.

Between 1943 and 1948, production increased to 300 pairs a day.

Plaintiffs' conduct in failing to preserve their pre-1950 records was grossly negligent. While this lawsuit was pending, important records containing material and relevant evidence were destroyed through the plaintiffs' gross negligence.

Plaintiffs made unjustified and unsubstantiated charges against their former attorneys and then withdrew such charges.

During the actual trial herein, the plaintiffs attempted for the first time to "reconstruct" (from such records as were available relating to the purchase of upper leather and split leather and by applying to such records a "conversion factor") plaintiff Avon Shoe Co., Inc.'s annual shoe production for the period from the last half of 1942 to 1950. Plaintiffs' methodology was unreliable because: (a) plaintiffs carried large inventories of leather and consequently purchases of leather for a particular year could not be accurately translated into shoe production; and (2) there were significant inconsistencies in the different sets of reconstructed production figures submitted by plaintiffs, e.g., one set of figures for 1946 was 26,747; another set for the same year was 48,933; one set of figures for 1947 was 31,055; another set for the same year was 21,094.

During the period from about 1950 to September 30, 1957, plaintiffs sold over 920,000 pairs of "Haymakers" shoes for over $7,000,000.

The amount spent by plaintiffs for advertising and promotional expenses during that period has not been established with reasonable accuracy for the reason that the schedule (Exh. 151) prepared by plaintiffs' accountant was discredited.

27. The word "haymaker" in sporting parlance is synonymous with a knockout or stunning blow. It has not yet received dictionary recognition or acceptance by popular usage as a noun or adjective applicable to a female or to feminine apparel in the same sense that she or it may be colloquially described as a "knockout" or "stunning." When used today in conjunction with women's apparel or women's accessories, it is a fanciful metaphor.

28. Manufacturers of women's shoes, including plaintiffs, do not manufacture women's sportswear.

29. In 1945, when "Haymaker" sportswear was introduced by the defendants, plaintiffs' "Haymakers" shoe name was of insignificant stature.

There is no evidence in the record as to the reputation of the "Haymakers" trademark as distinguished from plaintiffs' moccasin shoe; nor does such evidence as is in the record establish that a secondary meaning attached to the "Haymakers" shoe name or mark by 1945 or at any other time.

Defendants did not know of plaintiffs' "Haymakers" name at the time of the incorporation of Haymaker Sports, Inc. on April 2, 1945. Defendants' activities thereafter were not calculated to conceal from plaintiffs the fact that defendants were using the trademark "Haymaker." The corporate name of defendant Haymaker Sports, Inc., with an address at 498 Seventh Avenue, New York City, in the heart of the garment district, fairly suggests a manufacturer of sportswear.

Because of the extreme paucity of plaintiffs' advertising before 1945—only one national magazine editorial credit prior to 1945 (Vogue, October 1942) and only a one-quarter page advertisement of plaintiffs' moccasin shoes (Harpers' Bazaar, October 1942)—there is no particular significance to the circumstance that the defendants had their first Harper's Bazaar editorial credit in the May 1951 issue; or that the plaintiffs had their first editorial credit in Vogue in the October 1942 issue and that the defendants had their first Vogue editori-

al comment in the February 1948 issue; or that the plaintiffs had an advertisement (their first one) in Mademoiselle in the July 1945 issue and the defendants had an advertisement in the February 1948 issue of Mademoiselle.

The first advertisement using the word "Haymaker" in reference to goods sold by defendant Haymaker Sports, Inc., appeared in The New York Times on May 23, 1945, in an advertisement by Saks Fifth Avenue. This advertisement carried the legend "S.F.A. introduces Haymaker Blouses (Defendants' Exh. S–6). The words "S.F.A. introduces Haymaker Blouses" in this 1945 advertisement are printed in informal script. A comparison of that script printing with the script printing that appears throughout the Saks Fifth Avenue 1942 mailing leaflet or stuffer (Plaintiffs' Exh. 80–B) demonstrates that whoever in the Saks Fifth Avenue advertising department wrote the copy of the script in the 1945 advertisement probably wrote the copy of the script in the 1942 advertisement. The foregoing item does not constitute evidence that the defendants, directly or indirectly, attempted to imitate or copy the script style of the words "Haymaker Oxford" and "Haymaker Pump" in Plaintiffs' Exhibit 80–B. The latter is a leaflet that uses the same script style to advertise ten other shoe styles or patterns of plaintiffs comprising the "Avonettes" line (of which "Haymaker Oxford" and "Haymaker Pump" were two additional styles in that line).

30. The average woman purchaser is discriminating in the purchase of shoes and sportswear at the price ranges encompassing plaintiffs' and defendants' products.

31. There has been no confusion or likelihood of confusion among the trade or purchasing public between plaintiffs' "Haymakers" moccasin type shoe and defendants' fashionable line of "Haymaker" women's sportswear. The trade and purchasing public have not been misled into believing that plaintiffs are the source or origin of defendants' merchandise.

Seven department store executives who testified in behalf of defendants supplied credible evidence that any instances of consumer confusion as to source or origin of goods sold under the same trademark called to the attention of their respective stores, would have been reported to them. No instances of such confusion with respect to "Haymaker" or "Haymakers" had ever been reported to them.

32. Plaintiffs' comfortable moccasin walking shoe and defendants' fashionable and stylish line of sportswear attract different segments of the feminine purchasing public; and, if there are some common purchasers, the number is negligible.

33. There has been no proof by the weight of credible evidence that there was actual or likely confusion by any purchaser as to the origin or source of plaintiffs' or defendants' goods. The evidence of two letters written to plaintiffs (Exhs. 84, 85) and the testimony of plaintiffs' telephone operators (s.m.pp. 1472, 1473, 1513, 2511), if competent and credible, amounted to *de minimis*.

In only several instances out of literally thousands of advertisements, a few stores have publicized by separate advertisements in the same newspaper plaintiffs' "Haymakers" shoes and defendants' "Haymaker" women's sportswear. These are *de minimis* instances; are unrelated; and are not evidence of a pattern of conduct or of any plan or scheme.

In a very few instances, amounting to *de minimis*, several department stores made clerical errors with respect to plaintiff's account for defective merchandise delivered by defendants. The evidence herein concerning such clerical errors did not constitute proof of confusion as to the origin or source of defendants' goods.

In three out of ninety-six issues of women's magazines where defendants' "Haymaker" sportswear has been commented upon editorially, references were also made to plaintiffs' shoes as "styled by Haymaker" and "Haymakers" shoe and to defendants' shirts as "By Hay-

maker." These are *de minimis* instances; are unrelated; and are not evidence of a pattern of conduct or of any plan or scheme.

Aside from the defendants' good faith and the absence of any improper intent on the defendants' part (see Maternally Yours, Inc. v. Your Maternity Shop, Inc., 2 Cir., 1956, 234 F.2d 538, 543, and applying the "test" whether "an appreciable number of ordinarily prudent purchasers will be confused" (Maternally Yours, Inc., supra, 234 F.2d 542), the Court finds that there is neither actual nor likely confusion.

34. Defendants have not attempted to palm off their "Haymaker" sportswear to distributors, retailers or the purchasing public as the product of plaintiffs. Nor have defendants diverted any of plaintiffs' customers at the wholesale or retail level of purchasers.

35. Defendants' "Haymaker" women's sportswear line has not stained or tarnished whatsoever the reputation of plaintiffs' "Haymakers" shoe. Cf. Browne-Vintners Co. v. National Distillers & Chemical Corp., D.C.S.D.N.Y.1957, 151 F.Supp. 595, 606.

36. There was, and is, no necessity for plaintiffs, in order to hold or develop their "Haymakers" shoe business, to expand into the women's sportswear field; and plaintiffs have never even attempted or planned to do so.

37. Plaintiffs have not sustained any loss of sales or damage to reputation or otherwise, as a result of defendants' use of the trademark "Haymaker" on women's sportswear.

38. Defendants' notation on some of its labels, "Trade-Mark Reg.," was inadvertent, due to a misunderstanding within the defendant firms concerning the registration status of the "Haymaker" sportswear trademark, and was without intention to mislead the public. On none of the advertising of defendants' "Haymaker" sportswear did the erroneous notation appear.

39. In repeated instances during the period late 1942 through September 2, 1951, on advertisements for plaintiffs' "Haymakers" shoe published prior to the registration of that trademark, there appeared the statutory notation of registration, "Reg. U.S. Patent Office."

On some of the handbags made by handbag manufacturers but sold by plaintiffs, there appeared the statutory notice of registration ®, although plaintiffs do not own a trademark registration for handbags.

40. The mark "Haymaker" has been registered for a variety of products.

A "Haymaker" trademark for farm seeds was registered in the United States Patent Office by J. G. Peppard Seed Company on July 16, 1929 (Reg.No.258,-847; date of first use, January 2, 1928).

A "Haymaker" trademark for hay storage bins was registered in the United States Patent Office by Martin Steel Products Corporation on January 21, 1947 (Reg.No.427,034; date of first use, September 1938).

A "Haymaker" trademark for baler twine was registered in the United States Patent Office by Bermingham & Prosser Company on August 31, 1954 (Reg.No.394,405; date of first use, January 30, 1953).

A "Haymaker" trademark for hay and forage chopping machines was registered in the United States Patent Office by Brady Manufacturing Corporation on April 22, 1958 on the supplemental register (Reg.No.660,887; date of first use, March 15, 1955).

A "Haymaker" trademark application was filed on March 18, 1950 in the United States Patent Office by D. B. Fuller & Co., the well-known textile firm, for textile fabrics, but was rejected, presumably because of the "Haymaker" glove trademarks. A second trademark application by that firm, filed June 26, 1951 in the United States Patent Office covering the trademark "Haymaker A Fuller Fabric," was rejected because of the registered glove trademarks.

There are approximately fifty-three different marks registered in the United States Patent Office containing the pre-

fix "Hay * * *" or the suffix "* * * maker" in the Patent Office classifications of clothing and fabrics. For example the trademark "Hayes" has been registered by two different firms for different goods, namely, (1) "men's, women's and children's shoes, boots and slippers," and (2) "women's dresses, suits, coats, slips, half slips, nightgowns, pajamas, panties, girdles, brassieres, and foundation garments." The trademark "Pacemaker" has been registered by four different firms for different goods, namely, (1) "hosiery," (2) "suits for men and boys," (3) "overalls, work shirts, and rompers," and (4) men's and children's shoes." On the same day, October 23, 1945, the trademark "Hit Maker" was registered by defendant David Crystal, Inc. for ladies' and misses' dresses, coats, dress and jacket ensembles, suits, blouses, skirts, slacks, coveralls, jumpers; and the trademark "Playmaker" was registered by Hollywood Casuals for women's playclothes—namely, "shorts, slacks, jumpers and playsuits."

41. The "Haymakers" or "Haymaker" name is not the only name used as a trademark by a manufacturer of women's shoes, on the one hand, and by a manufacturer of women's apparel, on the other hand. The trademark "Hayes" and the trademark "Pandora" are or have been so used.

42. Prior to 1945, plaintiffs' national advertising consisted of a one-quarter page advertisement in the October 1942 issue of Harper's Bazaar.

It was not until 1948 that plaintiffs began a modest advertising program, with seven advertisements in Vogue, Mademoiselle and Harper's Bazaar, which were followed in 1949 with fifteen advertisements in national women's magazines.

43. Plaintiffs' "Haymakers" shoe was commented on in the October 1, 1942 issue of Vogue. Not until the February 1953 issue of Vogue, a period of over ten years, was the "Haymakers" shoe again commented upon in a national women's magazine.

From March 1946 to February 1953, the "Haymaker" women's sportswear line was commented upon in national women's magazines no less than thirty-seven times.

Between February 1953 and the present, the disparity is even greater. Since February 1953, the "Haymaker" women's sportswear line has been commented upon no less than sixty times in national women's magazines, whereas plaintiffs' "Haymakers" shoe has been commented upon editorially in such magazines only eight times.

44. From 1945 (when defendants began using the trademark "Haymaker" on their women's sportswear) until February 25, 1952 (when The Daniel Hays Company, Inc. wrote to plaintiffs with reference to defendants' "Haymaker" women's sportswear), plaintiffs made no claim of trademark infringement or unfair competition.

During that period of seven years, defendants' use of the "Haymaker" trademark on women's sportswear was open, notorious and continuous.

Plaintiffs knew of defendants' extensive use of the "Haymaker" mark on women's sportswear long prior to February 25, 1952 and acquiesced in that use.

During the sixteen months between February 25, 1952 and June 25, 1953, when their attorneys wrote a "cease and desist" letter to defendants, plaintiffs made no claim of trademark infringement or unfair competition, and acquiesced in the continued use of the "Haymaker" mark on defendants' women's sportswear.

Between April 21, 1954 (the date of the first session of plaintiffs' examination before trial of defendants) and January 9, 1957, plaintiffs failed to prosecute this suit, which was marked off the trial calendar in May 1956 and was not restored to the calendar until April 9, 1957.

### Conclusions of Law

I. This Court has jurisdiction of the parties, the claims asserted in the pleadings, and the subject-matter of this action.

II. The interest of defendants to preserve the substantial business and good

will of their "Haymaker" women's sportswear line, which was built up by their own efforts during the eight years prior to the institution of this suit and the over four years since that time, is paramount to any of plaintiffs' interests.

III. Defendants' use of the trademark "Haymaker" on women's sportswear has not caused confusion as to the source or origin of such goods, nor is such use likely to cause confusion or mistake or to deceive purchasers as to the source or origin of such goods.

IV. Defendants' "Haymaker" trademark on women's sportswear was adopted by defendants in good faith and without knowledge of any prior use of plaintiffs' "Haymakers" shoe names and has been continuously used on a national scale by defendants since 1945. Such initial use by defendants was prior to the publication (on December 4, 1951) of the plaintiffs' registered trademark "Haymakers" (Reg.No.556,671) under 15 U.S.C.A. § 1062(a), and prior to the publication (on December 2, 1952) of the plaintiffs' registered trademark "Haymakers By Avon" (Reg.No.571,010) under 15 U.S.C.A. § 1062(a).

V. The "Haymakers" name on plaintiffs' women's moccasin shoe was not pirated by defendants. The "Haymakers" shoe name had not acquired secondary meaning by or in 1945 or at any subsequent time.

Plaintiffs have valid trademarks and trade names in "Haymakers" and "Haymaker By Avon" when applied to women's shoes; but these marks and names have not acquired secondary meaning as indicating articles of women's apparel or women's accessories manufactured, sold or controlled by plaintiffs.

VI. Defendants have not infringed, and do not infringe, any trademark rights of plaintiffs either by the manufacture and/or sale of "Haymaker" women's sportswear, or by the use of their mark "Haymaker" in the corporate name of defendant Haymaker Sports, Inc., in their advertising, and on their labels.

Defendants—who first used "Haymaker Sports" on women's apparel in the spring of 1945 and for a short time thereafter, and who first used "Haymaker" on women's apparel in the latter part of 1945 and continuously thereafter to date—did not and do not interfere with any rights of plaintiffs.

VII. Defendants have not competed, and do not compete unfairly, with plaintiffs by the manufacture and/or sale of their "Haymaker" women's sportswear, or by the use of their mark "Haymaker" in the corporate name of defendant Haymaker Sports, Inc., in their advertising, and on their labels, or by any other acts or activities.

VIII. Plaintiffs have suffered no damage from defendants' use of the trademark "Haymaker" in the corporate name of defendant Haymaker Sports, Inc., in their advertising, and on their labels, or from defendants' acts of activities in any other way.

Defendants' use of the trademark "Haymaker" and the corporate name "Haymaker Sports, Inc." on women's apparel has not caused confusion in the trade or among ultimate purchasers and is not likely to result in confusion to the purchasers of articles of women's apparel. Neither by dilution of plaintiffs' trademarks and trade names nor otherwise have the defendants infringed any of the plaintiffs' trademarks and trade names.

Defendants' use of "Haymaker" on their line of women's jewelry does not infringe plaintiffs" trademark or other rights and does not compete or compete unfairly with plaintiffs.

Defendants' use of various combinations of "Hay" and/or "Maker"—such as, "Hit Maker," "Cynthia Of Haymaker," "Charles Of Haymaker," "Hay Jr.," "Hey Jr.," "Hayette" and other similar terms—does not infringe any of plaintiffs' trademark or other rights and does not compete or compete unfairly with plaintiffs.

IX. Defendants' use of the mark "Haymaker" on women's sportswear and the manner in which defendants conduct their business do not constitute any threat to plaintiffs' reputation or good

will. Plaintiffs are not entitled to injunctive relief or to any other relief.

X. The assignment dated October 1, 1953 by The Daniel Hays Company, Inc. of its registered glove trademarks (Reg. No.380,719 and Reg.No.393,642) to Avon Shoe Co., Inc., was an assignment in gross and a nullity.

XI. The complaint should be, and hereby is, dismissed on the merits. Judgment should be entered on the counterclaim of defendants David Crystal, Inc. and Haymaker Sports, Inc. declaring that defendants' trademark "Haymaker" on women's sportswear does not infringe any of plaintiffs' trademark rights, and directing the Commissioner of Patents (in accordance with the provisions of 15 U.S.C.A., § 1119) to dismiss and dissolve the pending opposition of plaintiff Avon Shoe Co., Inc. to the registration of the mark "Haymaker" for items of women's sportswear and to issue registration to defendant Haymaker Sports, Inc. of said mark pursuant to its pending application filed October 20, 1953 and numbered 655,057. Costs and disbursements are awarded to defendants.

Settle judgment on five days' notice within five days from the date of the filing of this decision.